UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br><br>Plaintiff, )<br><br>v. )<br><br>ALL PETROLEUM-PRODUCT CARGO<br>ABOARD THE ACHILLEAS WITH<br>INTERNATIONAL MARITIME<br>ORGANIZATION NUMBER 9398072, )<br><br>Defendant. ) | Civil A. No. 21-cv-305 |

## UNITED STATES' VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

COMES NOW, Plaintiff the United States of America (the "United States"), by and through the United States Attorney's Office for the District of Columbia and the Counterintelligence and Export Control Section of the National Security Division, which brings this verified complaint for forfeiture in a civil action *in rem* against the defendant property, namely all petroleum-product cargo (the "Defendant Property") aboard the M/T ACHILLEAS (International Maritime Organization ("IMO") No. 9398072) (the "ACHILLEAS"), and alleges as follows.

### NATURE OF ACTION AND THE DEFENDANT IN REM

1.      This *in rem* forfeiture action arises out of an investigation by Homeland Security Investigations ("HSI") and the Federal Bureau of Investigation ("FBI"). Specifically, the United States is investigating Iran's transportation and sale of oil products for the benefit of sanctioned Iranian entities, including the Islamic Revolutionary Guard Corps ("IRGC") and the IRGC Quds Force ("IRGC-QF"). This action seeks to forfeit the Defendant Property which originated from

oil terminals in Iran, where it was originally loaded onto two Suezmax tankers affiliated, respectively, with the National Iranian Tanker Company ("NITC") and the IRGC-QF.  Those vessels utilized surreptitious means in order to hide the Defendant Property's Iranian origin and to transfer the Defendant Property onto other vessels moving the cargo into commerce by, and for the benefit of, the National Iranian Oil Company ("NIOC"), NITC, IRGC and the IRGC-QF, each of which has been designated by the U.S. Department of the Treasury's Office of Foreign Assets Control ("OFAC"), which is located in the District of Columbia.

2.     The Defendant Property is subject to seizure and forfeiture pursuant to 18 U.S.C. § 981(a)(1)(G)(1) as foreign assets: (i) of the IRGC or IRGC-QF, designated foreign terrorist organizations, which have engaged in planning and perpetrating federal crimes of terrorism as defined in 18 U.S.C. § 2332b(g)(5) against the United States, citizens or residents of the United States, or their property: or (ii) affording a person a source of influence over the IRGC or IRGC-QF.

## JURISDICTION AND VENUE

3.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1345 and 1355.

4.     Venue is also proper within this judicial district pursuant to 28 U.S.C. § 1355(b)(2).

5.     Pursuant to 14 U.S.C. § 522(a) and 28 U.S.C. § 2461(b), this court has jurisdiction for property subject to forfeiture on the high seas.

## FACTS GIVING RISE TO FORFEITURE

## A.     RELEVANT PARTICIPANTS IN THE IRANIAN OIL INDUSTRY

6.     The IRGC is a branch of the Iranian Armed Forces whose purpose is to defend the country's political system.  According to OFAC, the IRGC and its major holdings are a dominant presence in Iran's commercial and financial sectors, controlling multi-billion dollar businesses and maintaining extensive economic interests in the oil industry.  *See* https://home.treasury.gov/news/

press-releases/sm703.  On October 13, 2017, OFAC designated the IRGC pursuant to Executive Order ("E.O.") 13,224 for providing material support to the IRGC-QF, including by providing training, personnel, and military equipment.  *See* https://www.treasury.gov/press-center/press-releases/Pages/sm0177.aspx.

7.      On April 15, 2019, the Secretary of State designated the IRGC, including the IRGC-QF, as a Foreign Terrorist Organization.  *See* https://www.govinfo.gov/content/pkg/FR-2019-04-15/pdf/2019-07415.pdf.  The designation noted that the IRGC actively finances and promotes terrorism.

8.      The IRGC-QF is a branch of the IRGC that specializes in unconventional warfare and military intelligence operations.  On October 25, 2007, the Department of the Treasury designated the IRGC-QF pursuant to Executive Order No. 13,224 "for providing material support to the Taliban and other terrorist organizations."  https://www.treasury.gov/press-center/press-releases/pages/hp644.aspx.

9.      IRGC-QF official Rostam Qasemi, AKA Rostam Ghasemi, who previously served as the Iranian Minister of Petroleum from 2011 to 2013, "manages a group of individuals, shipping and oil companies, and vessels to sell Iranian crude, condensates, and gas oil."  https://home.treasury.gov/news/press-releases/sm767.  On September 4, 2019, OFAC designated Qasemi "for acting for or on behalf of the IRGC-QF and IRGC-QF Commander Qasem Soleimani."  *Id.* Following the death of Soleimani in 2020, Qasemi "assumed a portion of former IRGC-QF Commander Qasem Soleimani's role in facilitating shipments of oil and petroleum products for the financial benefit of the IRGC-QF."  https://home.treasury.gov/news/press-releases/sm1165.

10.     According to OFAC, "[t]he Iranian Ministry of Petroleum has been used by individuals at the highest levels of the Iranian regime to facilitate the IRGC-QF's revenue

generation scheme." https://home.treasury.gov/news/press-releases/sm1165. On October 26, 2020, OFAC designated the Iranian Ministry of Petroleum pursuant to E.O. 13,224, as amended, "for having materially assisted, sponsored, or provided financial, material, or technological support for, or goods or services in support of, the IRGC-QF." *Id.*

11.     The Iranian Ministry of Petroleum oversees NIOC, which "is responsible for the exploration, production, refining, and export of oil and petroleum products in Iran." https://home. treasury.gov/news/press-releases/sm1165. According to OFAC, NIOC is "an entity instrumental in Iran's petroleum and petrochemical industries, which helps to finance Iran's [IRGC-QF] and its terrorist proxies." https://home.treasury.gov/news/press-releases/sm885. OFAC has found that NIOC supplies crude oil and condensate sold by the IRGC-QF. *See* https://home.treasury.gov/ news/press-releases/sm767. On September 24, 2012, the U.S. Department of the Treasury submitted a report to Congress, as required by the Iran Threat Reduction and Syria Human Rights Act of 2012 ("ITRSHRA"), finding that NIOC was an agent or affiliate of the IRGC. *See* https://www.treasury.gov/press-center/press-releases/Pages/tg1718.aspx. On October 26, 2020, OFAC designated NIOC pursuant to E.O. 13,224 "for having materially assisted, sponsored, or provided financial, material, or technological support for, or goods or services in support of, the IRGC-QF." *See* https://home.treasury.gov/news/press-releases/sm1165.

12.     NITC is a subsidiary of NIOC and "is responsible for the transportation of Iranian crude exports." https://home.treasury.gov/news/press-releases/sm1165. According to OFAC, "NITC has also played a significant role in oil deals used to generate revenue for the IRGC-QF and Hizballah," *id.*, and has provided vessels for use in IRGC-QF oil operations, s*ee* https://home.treasury.gov/news/press-releases/sm767. NITC has used front companies to obscure its involvement in such oil shipments. *See* https://home.treasury.gov/news/press-releases/sm1165

("Furthermore, in order to obfuscate its involvement in shipping activity, NITC set up a front company in the United Arab Emirates (UAE), Atlas Ship Management.  NITC officials also arranged to create a separate UAE-based front company, Atlantic Ship Management Company, ostensibly as an entity to replace Atlas Ship Management.").  On November 5, 2018, OFAC designated NITC pursuant to E.O. 13,599 for its connections to the Government of Iran and its role in the Iranian shipping sector.  *See* https://home.treasury.gov/news/press-releases/sm541.  On October 26, 2020, OFAC designated NITC pursuant to E.O. 13,224 "for having materially assisted, sponsored, or provided financial, material, or technological support for, or goods or services in support of, the IRGC-QF." *See* https://home.treasury.gov/news/press-releases/sm1165.

## B.   IMPORTANCE OF PETROLEUM AND SHIPPING INDUSTRIES TO THE IRGC

13.   In designating NIOC and NITC under E.O. 13,224, OFAC reported: "NIOC and NITC provide both the oil and tankers for the sale of Iranian oil by the IRGC-QF." https://home.treasury.gov/news/press-releases/sm1165.   "The cooperation and coordination between the IRGC-QF and these entities extends well beyond the simple sale of oil, including coordination between NIOC and the Central Bank of Iran to facilitate the collection of tens of millions of dollars in proceeds from the sale of oil that benefitted the IRGC-QF."  *Id.*

14.   According to OFAC, the IRGC uses the proceeds from its involvement in the oil industry and other sectors of the Iranian economy to "support the IRGC's full range of nefarious activities, including the proliferation of weapons of mass destruction (WMD) and their means of delivery, support for terrorism, and a variety of human rights abuses, at home and abroad."  *See* https://home.treasury.gov/news/press-releases/sm703.  As recently as January 23, 2020, OFAC reported: "Iran's petroleum and petrochemical industries are major sources of revenue for the Iranian regime and funds its malign activities throughout the Middle East."  https://home.treasury. gov/news/press-releases/sm885.  Former Treasury Secretary Steven T. Mnuchin added: "Iran's

petrochemical and petroleum sectors are primary sources of funding for the Iranian regime's global terrorist activities and enable its persistent use of violence against its own people."  *Id.*

## C.   THE SARAK LOADED PART OF THE DEFENDANT PROPERTY AT SIRRI ISLAND, IRAN.

15.     On or around May 29, 2020, a Suezmax oil tanker, the M/T SARAK (IMO No. 9226968) (the "SARAK"), loaded part of the Defendant Property at the Sirri Island oil terminal in Iran.  According to IMO, the SARAK is registered in the Marshall Islands and is owned by Yam Shipping Inc.

16.     On September 4, 2019, OFAC added the SARAK to the SDN list for being a part of a large shipping network that is managed by senior IRGC-QF official and former Iranian Minister of Petroleum Rostam Qasemi and that financially supports the IRGC-QF and Hizballah. *See* https://home.treasury.gov/news/press-releases/sm767.

17.     According to a reliable confidential source, the SARAK is affiliated with the IRGC-QF and ships Iranian oil for NIOC.

## D.   THE SONIA I LOADED PART OF THE DEFENDANT PROPERTY AT KHARG ISLAND, IRAN.

18.     On or around June 23, 2020, a Suezmax oil tanker, the M/T SONIA I (IMO No. 9357365) (the "SONIA I"), loaded part of the Defendant Property at the Kharg Island oil terminal in Iran.  According to IMO, the SONIA I is registered in Panama and is owned by Alp Shipping Inc.  IMO further provides that the owner's address is "Care of NITC, East Shahid Atefi Street 35, Africa Boulevard, PO Box 19395-4833, Tehran, Iran."

19.     On November 5, 2018, OFAC placed the SONIA I on its Specially Designated Nationals and Blocked Persons List ("SDN List") due to SONIA I's ties to NITC.  *See* Notice of OFAC Sanctions Actions, 85 Fed. Reg. 18,334 (Apr. 1, 2020).

E.     **THE LUBOV RECEIVED THE DEFENDANT PROPERTY IN SHIP TO SHIP TRANSFERS WITH THE SONIA I AND SARAK WHILE A DECOY NITC SHIP PROVIDED FALSE AIS DATA TO DISGUISE THE LUBOV'S LOCATION.**

20.     Between on or around June 23, 2020, and on or around June 30, 2020, an Iranian-flagged, very large crude carrier ("VLCC") NITC supertanker, the M/T HUMANITY (IMO No. 9180281) (the "HUMANITY"), spoofed the M/T LUBOV (IMO No. 9293741) (the "LUBOV") by assuming the LUBOV's Automatic Identification System ("AIS") parameters.

21.     AIS is a system that transmits a ship's position so that other ships are aware of its position and can avoid collisions.  AIS spoofing is a technique where a ship manipulates its AIS transponder to transmit false data such as a ship's location or name.

22.     On June 12, 2020, the HUMANITY reported her position over AIS in the Gulf of Oman at GPS Position 25.37113N, 56.56983E.  Subsequently, the HUMANITY shut off her AIS transponder.  Based on satellite imagery, law enforcement can confirm that the HUMANITY sailed up the Persian Gulf in order to temporarily assume her new identity as the LUBOV.

23.     On June 23, 2020, once the HUMANITY began impersonating the LUBOV's AIS signature, the HUMANITY set sail for the Gulf of Oman.  According to satellite imagery received by law enforcement, the HUMANITY was at GPS Position 28.76802N, 50.01132E, heading southeast away from LUBOV and again on June 25th in the Gulf of Oman at GPS Position 25.79851N, 56.99101E.  In both instances, the HUMANITY was AIS spoofing as LUBOV.

24.     According to satellite imagery received by law enforcement, while the HUMANITY spoofed its AIS, the LUBOV, with her AIS transponder switched off, sailed southeast, a short distance from her original position to GPS Position 29.40953N, 49.32116E, appearing in satellite imagery on June 24, 2020.

25.     On or around June 26, 2020, the LUBOV conducted a ship-to-ship transfer with the SARAK, receiving part of the Defendant Property.

26.     On or around June 27, 2020, the LUBOV initiated a ship-to-ship transfer with the SONIA I, receiving the remainder of the Defendant Property.

27.     The LUBOV completed the second ship-to-ship transfer on June 28, 2020. Following the ship-to-ship transfer, the LUBOV, with AIS still switched off, sailed with the Defendant Property to the Gulf of Oman and replaced HUMANITY.  Once the LUBOV switched with HUMANITY, the LUBOV restored her AIS.

**F.     THE LUBOV TRANSFERRED THE DEFENDANT PROPERTY TO THE TRIDENT LIBERTY IN A SHIP TO SHIP TRANSFER.**

28.     According to AIS data, from July 1, 2020, to August 19, 2020, the LUBOV transited the Gulf of Oman and did not load or unload any cargo.

29.     Beginning on or around August 19, 2020, the LUBOV transferred the Defendant Property to a then Panamanian-flagged VLCC supertanker, then named the TRIDENT LIBERTY (IMO No. 9327072) (n/k/a the LIGERA) (the "TRIDENT LIBERTY"), in a ship-to-ship transfer in the Gulf of Oman, off the coast of Khor Fakkan, UAE, GPS Position 25.36104N, 56.42906E. The transfer took five days to complete.  After the ship-to-ship transfer, the TRIDENT LIBERTY updated her AIS information to indicate that she was fully laden with two million barrels of oil that she received from the LUBOV.

30.     After the receiving the Defendant Property from the LUBOV, the TRIDENT LIBERTY drifted off of the coast of Oman from August 24, 2020 until November 4, 2020.

**G.     THE TRIDENT LIBERTY TRANSFERRED THE DEFENDANT PROPERTY TO THE ACHILLEAS IN A SHIP TO SHIP TRANSFER.**

31.     On or around October 14, 2020, the purported chartering party, Fujairah International Oil and Gas Company ("FIOGC") entered into a charter agreement with Achilleas Carriers Corp., the owner of the ACHILLEAS, to carry "Basrah light crude oil" to China.  FIOGC

provided a fraudulent bill of lading indicating that the LUBOV loaded the Defendant Property at Basrah Oil Terminal, Iraq.

32.     On or around November 4, 2020, the TRIDENT LIBERTY transferred the Defendant Property to the Liberian-flagged ACHILLEAS in a ship-to-ship transfer in the Gulf of Oman in the vicinity of GPS position (25.14611N, 56.52729E).   The ship-to-ship transfer concluded on November 17, 2020.

## G.   THE BROKER OF THE DEFENDANT PROPERTY, BENCHMARK SHIP MANAGEMENT, IS AFFILIATED WITH THE IRGC AND PRODUCES FORGED DOCUMENTS TO HIDE THE ORIGIN OF IRGC CARGOES

33.     FIOGC's operating management company is Benchmark Ship Management ("Benchmark").

34.     On or about December 20, 2020, Prokopis Iliou, the Operations Manager for Capital Ship Management Corp., the Manager of the ACHILLEAS ("ACHILLEAS Manager"), corresponded with Janaka Sampath, the Operations Manager for Al Bahar Marine Services LLC, the Agent for the Charterer of the ACHILLEAS ("Charterer Manager") requesting "urgent confirmation and arrangements with Fujairah Port Authority and Harbour Master for the vessel's [ACHILLEAS] departure, without further delay and failure."

35.     The Charterer Manager advised the ACHILLEAS Manager that "We have been appointed by the charterer and not by the owner or vessel master, therefor [sic] we should receive instructions from charterer to arrange clearance.  Please contact the vessel charter and inform them to advise the agent to issue anchorage clearance and we will follow their instructions accordingly. Ms. Benchmark Ship Management ("Benchmark") RIC, kindly advise us."

36.     Multiple email addresses for Benchmark have been included on subsequent correspondence between the ACHILLEAS Manager, the Charterer Manager, and the Harbor Master of Fujairah.

37.     According to a Confidential Human Source ("CHS 1"), Benchmark has made arrangements on multiple occasions over the last year to purchase Iranian crude oil from IRGC controlled entities.  CHS 1 stated that Benchmark has handled shipments of Iranian petroleum products purchased from both Iranian Government and private entities using infrastructure throughout the UAE and abroad.  CHS 1 also stated that Benchmark utilizes forged origin documents to hide the Iranian origin of the petroleum products it ships from shipping companies and port authorities in order to avoid scrutiny and detection that the cargo is being shipped by IRGC front companies.

38.     According to a Confidential Human Source ("CHS 2"), Benchmark is a front company setup by the IRGC-QF to handle illicit oil sales conducted by FIOGC on their behalf.

## COUNT ONE – FORFEITURE
### (18 U.S.C. § 981(A)(1)(G)(I))

39.     The United States incorporates by reference the allegations set forth in Paragraphs 1 to 36 above as if fully set forth herein.

40.     The IRGC is a designated foreign terrorist organization.

41.     The IRGC-QF is a designated foreign terrorist organization.

42.     As described above, the Defendant Property is an asset of the IRGC and IRGC-QF and affords a source of influence over the IRGC and IRGC-QF within the meaning of 18 U.S.C. § 981(a)(1)(G)(i).

43.     The Defendant Property is subject to seizure and forfeiture pursuant to 18 U.S.C. § 981(a)(1)(G)(1), as foreign assets of the IRGC and IRGC-QF, both designated foreign terrorist organizations, which have engaged in planning and perpetrating federal crimes of terrorism as defined in 18 U.S.C. § 2332b(g)(5) against the United States, U.S. citizens or residents, or their property, and as sources of influence by a person or entity over the IRGC and IRGC-QF.

## PRAYER FOR RELIEF

WHEREFORE, the United States prays that notice issue on the Defendant Property as described above; that due notice be given to all parties to appear and show cause why the forfeiture should not be decreed; that judgment be entered declaring that the Defendant Property be forfeited to the United States for disposition according to law; and that the United States be granted such other relief as this Court may deem just and proper, together with the costs and disbursements of this action.

Dated: February 2, 2021
      Washington, D.C.

                        Respectfully submitted,

                        MICHAEL R. SHERWIN
                        Acting United States Attorney

                    By:   /s/ *Michael P. Grady*
                        MICHAEL P. GRADY
                        D.C. Bar No. 492947
                        BRIAN P. HUDAK
                        Assistant United States Attorneys
                        555 Fourth Street, N.W.
                        Washington, D.C. 20530
                        (202) 252-7649

                        JOHN C. DEMERS
                        Assistant Attorney General
                        National Security Division

                  By:   /s/ *David Lim*
                        DAVID LIM
                        Trial Attorney
                        Counterintelligence & Export Control
                        Section
                        National Security Division
                        950 Pennsylvania Avenue, N.W.
                        Washington, D.C. 20530
                        202-514-0510

                        *Attorneys for the United States of America*

## **VERIFICATION**

I, Gregory King, a Special Agent with the Homeland Security Investigations, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing Verified Complaint for Forfeiture *In Rem* is based upon reports and information known to me and/or furnished to me by other law enforcement representatives and that everything represented herein is true and correct. Executed on this 2nd day of February 2021.


 */s/ Gregory King*
Special Agent Gregory King
Homeland Security Investigations



I, Cindy Burnham, a Special Agent with the Federal Bureau of Investigation, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing Verified Complaint for Forfeiture *In Rem* is based upon reports and information known to me and/or furnished to me by other law enforcement representatives and that everything represented herein is true and correct. Executed on this 2nd day of February 2021.

 */s/ Cindy Burnham*
Special Agent Cindy Burnham
Federal Bureau of Investigation