UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ALL PETROLEUM-PRODUCT CARGO ABOARD THE ACHILLEAS WITH INTERNATIONAL MARITIME ORGANIZATION NUMBER 9398072,<br><br>Defendant In Rem,<br><br>FUJAIRAH INTERNATIONAL OIL & GAS CORPORATION,<br><br>Claimant,<br><br>- and -<br><br>STEVEN M. GREENBAUM, et al.,<br><br>Claimants. | Civil Action No. 21-0305 (PLF) |

**REPLY IN SUPPORT OF UNITED STATES' MOTION TO STRIKE GREENBAUM CLAIMANTS' VERIFIED CLAIMS AND ANSWER**

As established in the United States' motion to strike the Greenbaum Claimants' verified claims and answer (ECF No. 65), and not persuasively rebutted in the Greenbaum Claimants' Opposition (ECF No. 67), the claims of the Greenbaum Claimants should be stricken because the Greenbaum Claimants cannot claim the necessary colorable interest in the Defendant Property, petroleum cargo formerly aboard a vessel called the M/T Achilleas, that is necessary to have constitutional and statutory standing to participate in this civil forfeiture action.

Because their lack of a sufficient interest in the Defendant Property or substitute res in the possession of the United States is clear, the Greenbaum Claimants argue that the Terrorism Risk

Insurance Act of 2002 ("TRIA"), Pub. L. 107-297, Title II, § 201, 116 Stat. 2337, 2339 (28 U.S.C. § 1610 note) provides them standing to contest this civil forfeiture. It does not as courts within and without this Circuit have held. Accordingly, the United States respectfully reiterates its request to strike the verified claims and answer of the Greenbaum Claimants.

## I. <u>The Greenbaum Claimants Lack Constitutional Standing</u>

The Greenbaum Claimants correctly point out that the D.C. Circuit has characterized the requirements for a claimant to demonstrate constitutional standing to participate in an in rem proceeding as "very forgiving." *United States v. $17,900.00 in United States Currency*, 859 F.3d 1085 (D.C. Cir. 2017) (quoting *United States v. Emor*, 785 F.3d 671, 676 (D.C. Cir. 2015)). But even this "forgiving" standard still requires at the pleading stage claimant to allege a "colorable interest" in the defendant property. *Id.*; *United States v. All Assets Held at Bank Julius Baer & Co., Ltd.*, Civ. A. No. 04-0798 (PLF), 2020 WL 7640213, at *7 (D.D.C. Dec. 23, 2020). It is this colorable interest in the defendant property, and the potential loss of that interest through forfeiture, that creates the "case or controversy" sufficient to support constitutional standing. *United States v. 8 Gilcrease Lane*, 641 F. Supp. 2d 1, 6 (D.D.C. 2009) ("[I]n a civil forfeiture case, a claimant's constitutional standing 'turns upon whether the claimant has a sufficient interest in the property to create a case or controversy.'" (quoting *United States v. Real Property Located at 5208 Los Franciscos Way*, 385 F.3d 1187, 1191 (9th Cir. 2004)).

The Greenbaum Claimants do not and cannot allege a colorable interest in the Defendant Property. In their Verified Claims, they allege only the existence of in personam judgments against the Islamic Republic of Iran and their interpretation of TRIA. *See, e.g.*, Verified Claim (ECF No. 26) ¶ 5. The Greenbaum Claimants previously sought to obtain a colorable interest in the Defendant Property through writs of attachment, but the writs were quashed because the resulting res was in possession of the United States and sovereign immunity barred the writs. *See*

*Greenbaum v. Islamic Republic of Iran*, 67 F.4th 428, 431 (D.C. Cir. 2023). Therefore, the Greenbaum Claimants are unsecured creditors of Iran because they are "owed money" by Iran but have no interest in the "specific defendant funds" sought to be forfeited. *United States v. $299,218.48 in United States Currency*, 719 F. Supp. 3d 85 (D.D.C. 2024); *United States v. One-Sixth Share of James J. Bulger in All Present & Future Proceeds of Mass Millions Lottery Ticket*, 326 F.3d 36, 44 (1st Cir. 2003) (distinguishing an in personam judgment and a secured interest against a particular asset).

Unsecured creditors, like the Greenbaum Claimants, do not have standing to contest civil forfeiture. As stated by the D.C. Circuit, it is "typically, an ownership or possessory interest" in the defendant property—which the Greenbaum Claimants lack—that supplies the colorable interest to support constitutional standing. *See $17,900*, 859 F.3d at 1090. The Seventh and Tenth Circuits are in accord. *See United States v. Funds in the Amount of $239,400*, 795 F.3d 639, 643 (7th Cir. 2015) (finding constitutional standing satisfied by evidence that claimant was the "owner" of and in "possession" of the currency when seized ); *United States v. $148,840 in U.S. Currency*, 521 F.3d 1268, 1276 (10th Cir. 2008) (stating the burden to show constitutional standing is satisfied by "a sufficient interest in the seized property, such as an ownership interest, some type of lawful possessory interest, or a security interest").

The Greenbaum Claimants cite a non-controlling Seventh Circuit decision, *United States v. All Funds on Deposit with R.J. O'Brien & Assocs.*, 783 F.3d 607 (7th Cir. 2015), to suggest that being a mere judgment creditor under TRIA provides them constitutional standing. *See* Opp. at 5–6. What the Greenbaum Claimants fail to mention is that the claimants in *R.J. O'Brien* had obtained a lien on the defendant property. *R.J. O'Brien*, 783 F.3d at 614. Prior to that, claimants were unsecured creditors of al Qaeda. *Id*. Due to the claimants' lien, the court reasonably found

a constitutionally supported injury in an "impending forfeiture of seized terrorist funds to which [claimants] have an arguable claim." *Id.* at 616. *R.J. O'Brien* is therefore consistent with this Circuit's precedent ruling that an ownership or security interest in the specific property is necessary for constitutional standing.

The Greenbaum Claimants also argue that "TRIA gives [them] a colorable claim to the Defendant Property." Opp. at 6. Not so. Plainly, if the Greenbaum Claimants had a colorable interest in Defendant Property, they would not be arguing that a statute which says nothing about forfeiture (or the Defendant Property) provides them with standing in this civil forfeiture proceeding. TRIA provides only an enhanced judgment collection provisions for judgments in its coverage. It does not create security interests in property when none otherwise exist. The Greenbaum Claimants attempted to avail themselves of those provisions but were unsuccessful. *Greenbaum*, 67 F.4th at 435. That is the end of the road for their attempts to collect against the Defendant Property here.

## II. <u>The Greenbaum Claimants Lack Statutory Standing</u>

The statutory standing requirement is grounded in 18 U.S.C. § 983, which limits intervention in civil forfeiture actions to "any person claiming an interest in the seized property" who "file[s] a claim asserting such person's interest in the property in the manner set forth in the Supplemental Rules." 18 U.S.C. § 983(a)(4)(A); *Bank Julius Baer*, 2023 WL 5000213, at *8. And pursuant to Supplemental Rule G, a claimant contesting the United States' forfeiture must file a claim that "state[s] the claimant's interest in the property." Fed. R. Civ. P. Supp. R. G(5)(a)(i)(B); *see also* Fed. R. Civ. P. Supp. R. C(6)(a)(i)-(ii) (requiring a claimant to file a "verified statement of right or interest" that "must describe the interest in the property"). But as the Greenbaum Claimants' Verified Claims make clear, they have no "interest" in the Defendant Property itself;

all they have are judgments against Iran and their interpretation of TRIA. *See, e.g.,* Verified Claim (ECF No. 26) ¶ 5.

Again, their in personam judgments against Iran make the Greenbaum Claimants creditors of Iran but provide them nothing more than a general, unsecured interest in the Defendant Property. *See, e.g.*, *$299,218.48*, 719 F. Supp. 3d at 91-92 (ruling the general interest a creditor has in the assets of judgment debtor does not constitute an interest in a specific asset); *8 Gilcrease Lane*, 641 F. Supp. 2d at 5 ("The generalized legal interest movants may have in the assets of [Defendant] does not equate to the necessary particularized interest in any specific asset of [Defendant] required for standing."). Unsecured creditors are expressly excluded by statute from making a civil forfeiture claim. 18 U.S.C. § 983(d)(6)(B). The Greenbaum Claimants do not dispute the string of cases cited by the United States, *see* Mot. at 6-7, that unsecured creditors lack standing to contest civil forfeiture of defendant property.

Instead, the Greenbaum Claimants argue that they are not "mere" general unsecured creditors because they have a "federal right" under TRIA to Defendant Property. Opp. at 9-10. Yet, the Greenbaum Claimants cite nothing in the text of TRIA or any other legal authority that makes the holder of an unfulfilled in personam judgment into something other than an unsecured creditor of properties that have not been successfully attached, as another judge in this District recently ruled. *See United States v. Fifty-Three Virtual Currency Accounts*, Civ. A. No. 20-2227 (RC), 2024 WL 4827321 (D.D.C. Nov. 19, 2024) (TRIA creditor with terrorism-related judgment lacked statutory standing when it was a mere unsecured creditor vis-à-vis the property sought to be forfeited).

The Greenbaum Claimants next argue that the statutory standing requirements of civil forfeiture "should be disregarded" altogether because there is a purported "conflict" between civil

forfeiture's Section 983 and TRIA, and the provisions of TRIA must apply "notwithstanding any other provision of law." Opp. at 10 (citing TRIA § 201(a)). That, of course, is not how courts construe statutes. The Court must strive to "give effect to both" purportedly conflicting statutes, *see, e.g., Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 510 (2018) (cleaned up), and here both statutes can "mutually coexist" because the Greenbaum Claimants do not point to any "positive repugnancy" between the two. *See, e.g., J.E.M. Ag Supply, Inc. v. Pioneer Hi-Bred Int'l, Inc.*, 534 U.S. 124, 143 (2001). The most that the Greenbaum Claimants point to is their belief that the civil forfeiture requirements, and the Government's ability to use civil forfeiture, present "barriers to Greenbaum Claimants' ability to satisfy their judgments." Opp. at 10, 13. That does not provide a basis for the Court to ignore the statutory provisions governing who may contest civil forfeiture.

It appears the Greenbaum Claimant's conflict theory is based on a previously rejected overreading of Section 201(a) of TRIA. Section 201(a) states, in relevant part, that "[n]otwithstanding any other provision of law . . . in every case in which a person has obtained a judgment against a terrorist party . . . the blocked assets of that terrorist party . . . shall be subject to execution or attachment in aid of execution in order to satisfy such judgment[.]" The Fifth Circuit in *United States v. Holy Land Found. for Relief & Dev.*, 722 F.3d 677, 688 (5th Cir. 2013) rejected a similar "sweeping assertion" that the "notwithstanding" clause displaces the criminal forfeiture provisions of 21 U.S.C. § 853 because the Government's use of those provisions made it harder to reach assets. The court ruled that TRIA Section 201(a) cannot be read to "trump[] any other law that has the incidental effect of removing funds from the reach of judgment creditors." *Id*. at 688. Likewise, the "notwithstanding clause" cannot be read to displace the civil forfeiture provisions of 18 U.S.C. § 983 because the use of those provisions present a purported "barrier" to the Greenbaum Claimants' ability to satisfy their outstanding judgments.

These rulings make all the sense in the world under the text of TRIA itself. The "notwithstanding" clause in TRIA does not preempt all other statutes no matter their purpose or import. Instead, TRIA's notwithstanding clause overcomes conflicting statutory and regulatory "provisions of law" that prohibit "execution or attachment in aid of execution" of a terrorist party—most notably, the Foreign Sovereign Immunities Act ("FSIA"). *See Est. of Levin v. Wells Fargo Bank*, N.A., Civ. A. No. 21-0420 (JEB), 2023 WL 3750577, at *8 (D.D.C. June 1, 2023) (TRIA's notwithstanding provision did not preempt common law doctrines), *appeal filed*, No. 23-7082 (D.C. Cir. argued Sept. 20, 2024); *Ministry of Def. v. Elahi*, 556 U.S. 366, 386 (2009) ("the history suggests that Congress placed the 'notwithstanding' clause in § 201(a) for totally different reasons, namely, to eliminate the effect of any Presidential waiver issued under 28 U.S.C. § 1610(f) prior to the date of the TRIA's enactment"). No reasonable reading of TRIA's "notwithstanding" clause suggests that Congress sought to preempt anything but barriers to attachment and execution (not barriers to participation in a civil forfeiture proceeding when such attachment and execution proved unsuccessful). TRIA § 201(a).

The Greenbaum Claimants attempt to distinguish *Holy Land* and other cases by directing the Court to *R.J. O'Brien*. The Greenbaum Claimants cherry-pick phrases from *R.J. O'Brien* case but miss the ultimate conclusion in the case, which supports the Government, and gloss over the Seventh Circuit's actual analysis of standing. The Seventh Circuit did not explore the relevant question here—whether claimants had satisfied the requirement of having a specific property interest in the defendant property. This is because the Government pressed "zone of interests" arguments regarding standing given that claimants had a perfected lien on the defendant funds and the district court allowed amendment of claimants' claim to so reflect, giving the creditors the specific interest required by civil forfeiture statute. *R.J. O'Brien*, 783 F.3d at 614, 619. The court's

consideration of the "notwithstanding" clause centered around the "innocent owner" defense, not the statutory requirement that claimant have an ownership "interest in the specific property" sought to be forfeited. *Id*. at 620.

Ultimately, after ruling on standing, the Seventh Circuit remanded the case with instructions to enter summary judgment in favor of the Government because by the time claimants filed their verified claims, the defendant funds were no longer blocked assets as defined by TRIA. *Id*. at 627. Rather, "once the United States executed its warrants of arrest in rem, the funds—at least by that point—were no longer 'seized or frozen' as TRIA contemplates the terms . . . . Instead, the funds were seized under civil forfeiture."[1] *Id*. at 625. The Court in *Holy Land* similarly ruled that since the defendant "assets already had been restrained under [criminal forfeiture] . . . [claimants'] right under the TRIA to execute against those funds never became effective[.]" *Holy Land*, 722 F.3d at 688. Here, the Greenbaum Claimants assert in conclusory terms that the Defendant Property is a "blocked asset" under TRIA, but that assertion lacks support in any caselaw, including the lone case from this district to have considered it. *Levin*, 2023 WL 3750577, at *5 ("The Second, Fifth, and Seventh Circuits, as well as judges in this district, have unanimously held that when an otherwise 'blocked' transaction becomes subject to an OFAC license, the relevant assets become unblocked and 'not subject to attachment' under TRIA. . . .

---

1 And because the funds were not "blocked assets," the Seventh Circuit ruled that claimants "cannot attach the defendant funds, now seized and held by the United States[.]" *Id*. at 628. If the Seventh Circuit believed the "specific property interest" requirement for statutory standing was superseded by TRIA, its entire analysis of whether the funds could be assets subject to attachment under TRIA would have been irrelevant. The court would have simply allowed the unsecured creditors to pursue claims in forfeiture with no need for attachment. That was not the holding, just the opposite. After effectively quashing the creditors' attachment, the court disposed of the creditors' forfeiture claim. *Id*. at 626-27. This court should follow suit.

This Court agrees with their analyses.").[2] And both *R.J. O'Brien* and *Holy Land* instruct that assets arrested in civil or criminal forfeiture are not blocked assets under TRIA.

The Greenbaum Claimants make additional arguments that, "[i]f the Court finds the Greenbaum Claimants have standing to participate" in this civil forfeiture proceeding, the Court may use Federal Rule of Civil Procedure 69(a), which provides for the enforcement of federal money judgments through writs of execution, to direct a portion of the Defendant Property res to them. Opp. at 15-18. Such writs of execution would be barred by the United States' sovereign immunity, *see Greenbaum*, 67 F.4th at 431, but there is no need to address these arguments in detail because, as the Greenbaum Claimants admit, they go beyond the question at hand—whether the Court should strike their claims and answer to the Amended Complaint for a lack of standing.

The Greenbaum Claimants also opine on what they perceive to be unresolved questions from the D.C. Circuit's *Greenbaum* decision regarding the scope of sovereign immunity and victims' "rights under the TRIA." Opp. at 18-19. Again, the question before the Court is straightforward, as is the answer—the Greenbaum Claimants fail satisfy their burden of establishing standing to participate in this civil forfeiture proceeding.

In sum, the Greenbaum Claimants attempted to obtain an interest in Defendant Property through writs of attachment because an interest in the specific property is required to contest civil forfeiture of that property. When that effort failed, they remained unsecured creditors of Iran and lost the ability participate in this civil forfeiture proceeding. Further, there is no legal basis on

---

[2] Greenbaum Claimants note that the Government did not move on the issue of the Defendant Property being a "blocked asset," Opp. at 12, but the issue is contested by the Government. The question of whether the Defendant Property constitutes a "blocked asset" as defined under TRIA was not necessary to address in its Motion because Greenbaum Claimants' Verified Claim demonstrates that they cannot allege a colorable interest in the Defendant Property to satisfy constitutional and statutory standing.

which to "disregard" the standing requirements of civil forfeiture or otherwise create exceptions to civil forfeiture that Congress did not create in TRIA or elsewhere.

## III. The Greenbaum Claimants Acknowledge Alternative Routes of Recovery

The law has afforded the Greenbaum Claimants with alternative paths to pursue a potential recovery from the Defendant Property. The fact that they choose not to avail themselves of those paths does not mean those paths are not viable alternatives to recovery.

First, the Greenbaum Claimants concede that they can file a petition for remission or migration with the Justice Department. Opp. at 20. They suggest that such a petition would not be granted, but, of course, that would most assuredly be the outcome if the Greenbaum Claimants choose not to file a petition at all.

Second, the Greenbaum Claimants concede that they had the option of participating in the U.S. Victims of State Sponsored Terrorism Fund (the "Victims Fund"). *See* 34 U.S.C. § 20144. Specifically, they had a choice of participating in this compensation fund or retaining their significant existing and future recoveries in *Peterson v. Islamic Republic of Iran*, Civ. A. No. 10-4518 (S.D.N.Y.), *and In re 650 Fifth Avenue*, Civ. A. No. 08-10934 (S.D.N.Y.). 34 U.S.C. § 20144(e)(2)(B)(ii), (iii). They chose the latter as was their right, and the option that made the most economic sense. Indeed, the parties to those proceedings collected deservedly eye-popping recoveries to compensate them for their horrible losses. *See, e.g., Peterson*, ECF No. 1059-1 (Jan. 2020 interim accounting submitted by Hon. Stanley Sporkin as trustee) at 2, 5-6 (identifying claimants plus three other plaintiff groups as the "13% Plaintiffs," noting distributions of $213,160,262 to them and their attorneys); *id.*, ECF No. 1096-1 (Mar. 2021 motion for approval of final accounting) at 22 (noting total final distributions to 13% Plaintiffs of $219,286,900). This demonstrates that this case is not the Greenbaum Claimants' only vehicle to pursue relief for their harms, and by allowing the Greenbaum Claimants to recover in this case will undoubtedly be at

the expense of those terrorist victims whose only meaningful method of obtaining compensation is the Victims Fund.

**CONCLUSION**

For the reasons stated in its Motion and above, the Court should strike the verified claims and answer of the Greenbaum Claimants.

Dated: November 26, 2024

Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

By: *<u>/s/ Brian P. Hudak</u>*
BRIAN P. HUDAK
Chief, Civil Division
U.S. Attorney's Office
601 D Street, NW
Washington, DC 20530
(202) 252-7566 (main)

SEAN M. TEPE, D.C. Bar #1001323
STUART D. ALLEN, D.C. Bar #1005102
RAJBIR DATTA, N.Y. Bar #5206073
Assistant United States Attorneys

*Attorneys for the United States of America*