UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ALL PETROLEUM-PRODUCT CARGO ABOARD THE ACHILLEAS WITH INTERNATIONAL MARITIME ORGANIZATION NUMBER 9398072,<br><br>Defendant In Rem,<br><br>FUJAIRAH INTERNATIONAL OIL & GAS CORPORATION,<br><br>Claimant,<br><br>- and -<br><br>STEVEN M. GREENBAUM, et al.,<br><br>Claimants. | Civil Action No. 21-0305 (PLF) |

OPINION

This matter is before the Court on the United States' Motion to Strike Greenbaum Claimants' Verified Claims and Answer [Dkt. No. 65].[1] In this civil action, brought in rem, the

[1] The filings reviewed in connection with this motion include the following documents and their attachments: United States' Verified Complaint for Forfeiture In Rem ("Compl.") [Dkt. No. 1]; Warrant for Arrest In Rem ("Warrant") [Dkt. No. 2]; Government's Motion for Interlocutory Sale ("Mot. for Sale") [Dkt. No. 3-2]; Order dated February 9, 2021 ("Sale Order") [Dkt. No. 5]; Notice of Filing Accounting of Interlocutory Sale ("Sale Notice") [Dkt. No. 23]; Verified Claims [Dkt. Nos. 24 to 48]; United States' Motion for Leave to Amend ("Mot. to Amend") [Dkt. No. 57]; United States' Verified Amended Complaint for Forfeiture In Rem ("FAC") [Dkt. No. 61]; Answer [Dkt. No. 62]; United States Motion to Strike Greenbaum Claimants' Verified Claims and Answer ("Mot.") [Dkt. No. 65]; The Greenbaum Claimants'

United States seeks forfeiture of the proceeds from the sale of oil cargo that allegedly belonged to sanctioned entities of the Islamic Republic of Iran (the "Defendant Property"). The Greenbaum Claimants are victims of terrorism who seek to satisfy judgments previously obtained against Iran for its role in the terrorist activities that harmed them.[2] The instant dispute centers on whether the Greenbaum Claimants have constitutional and statutory standing to contest forfeiture of the Defendant Property. Because the Court concludes that the Claimants have standing, it will deny the United States' motion.

## I. BACKGROUND

On February 2, 2021, the United States filed a verified complaint against the Defendant Property, oil cargo formerly aboard a vessel called the M/T Achilleas, alleging that the oil was owned by Iranian entities designated as foreign terrorist organizations and thus subject to civil forfeiture under 18 U.S.C. § 981(a)(1)(G)(i). See Compl.; FAC ¶¶ 1-2. The following day, the Court issued an in rem arrest warrant for the Defendant Property. See Warrant. Because the Defendant Property was under the direction and control of the United

---

Memorandum of Points and Authorities in Opposition to the United States' Motion to Strike Greenbaum Claimants' Verified Claims and Answer ("Opp.") [Dkt. No. 67]; and Reply in Support of United States' Motion to Strike Greenbaum Claimants' Verified Claims and Answer ("Reply") [Dkt. No. 74].

[2] The Greenbaum Claimants are Alan Hayman, as Personal Representative of the Estate of Shirlee Hayman; Alan Hayman; Steven M. Greenbaum; Baruch Kahane; Carlos Acosta, as Fiduciary for the Estate of Maria Acosta; Carlos Acosta; Elizabeth Rich, as Executrix for the Estate of Irma Franklin; Elizabeth Rich, as Executrix for the Estate of Irving Franklin; Libby Kahane; Meir David Kahane, as Administrator for the Estate of Binyamin Kahane; Moshe Daniel Kaplan, as Administrator of the Estate of Cipporah Kaplan; Norman Kahane; Shulamit Dopelt, as Executor of the Estate of Sonya Kahane; Tova Ettinger; Estelle Carroll; Harry Beer, as Personal Representative of the Estate of Alan Beer; Harry Beer, as Administrator for the Estate of Anna Beer; Harry Beer; Phyllis Maisel; Danielle Teitlebaum; David Kirschenbaum; Isabelle Kirschenbaum, as Executrix for the Estate of Martin Kirschenbaum; Isabelle Kirschenbaum; Jason Kirschenbaum; and Joshua Kirschenbaum.

States when the warrant was issued, the warrant was executed by the Court by issuing it to the United States. See FED. R. CIV. P. SUPP. R. G(3)(c)(ii)(A). The United States then moved the Court for an interlocutory sale of the Defendant Property, see Mot. for Sale, which the Court granted on February 9, 2021, see Sale Order. Thereafter, the Defendant Property was sold, and its net proceeds—approximately $100 million—constitute the substitute res in this action. See Sale Notice.[3]

The Greenbaum Claimants are the surviving victims of multiple terrorist attacks, representatives of the estates of the deceased victims, and victims' family members. They hold judgments against Iran to compensate them for Iran's role in supporting and facilitating the terrorist activities that caused their injuries. See Verified Claims ¶¶ 1-3. In the years since obtaining judgments against Iran, the Greenbaum Claimants "have diligently fought to enforce their judgments and receive their compensation." Greenbaum v. Islamic Republic of Iran, 588 F. Supp. 3d 77, 79 (D.D.C. 2022). As of December 2023, after accounting for post-judgment interest and reducing for recoveries obtained, about $72 million of the nearly $100 million in compensatory damages originally awarded to the Claimants remains outstanding. See Verified Claims ¶ 3; Opp. at 2.

Soon after the arrest of the Defendant Property in this matter, the Greenbaum Claimants "caught wind of the M/T Achilleas and its bounty." Greenbaum v. Islamic Republic of Iran, 588 F. Supp. 3d at 79. The Claimants sought to enforce their judgments against Iran by obtaining writs of attachment and execution against the Defendant Property pursuant to provisions of the D.C. Code. See id.; Greenbaum v. Islamic Republic of Iran, 67 F.4th 428, 430 (D.C. Cir. 2023). Judge Lamberth initially granted the Claimants' motion for the writs but

[3] The Court refers to the substitute res as the "Defendant Property" in this Opinion.

thereafter quashed the writs, holding that the United States enjoyed federal sovereign immunity from the collection process for property in its possession that had been seized for forfeiture. See Greenbaum v. Islamic Republic of Iran, 588 F. Supp. 3d at 80, 84. The D.C. Circuit affirmed Judge Lamberth's quashal. See Greenbaum v. Islamic Republic of Iran, 67 F.4th at 430.

In February 2024, following their unsuccessful effort to obtain writs of attachment, the Greenbaum Claimants filed verified claims advancing an interest in the Defendant Property to satisfy their outstanding compensatory damage awards. See Verified Claims. Specifically, the Claimants assert an interest based on their outstanding judgments against Iran and on Section 201 of the Terrorism Risk Insurance Act of 2002, Pub. L. 107-297, Title II, § 201, 116 Stat. 2322 (codified at 28 U.S.C. § 1610 note).

On May 1, 2024, the United States moved for leave to amend its verified complaint, see Mot. to Amend, which the Court granted by Minute Order dated July 3, 2024. The Greenbaum Claimants filed their answer to the amended complaint on July 17, 2024. See FAC; Answer. On September 13, 2024, the United States filed the instant motion to strike, arguing that the Greenbaum Claimants lack both constitutional and statutory standing to contest forfeiture of the Defendant Property. See Mot. The Greenbaum Claimants filed their opposition on November 1, 2024, see Opp., and the United States filed its reply on November 26, 2024, see Reply. The United States' motion is now ripe for decision.

## II. APPLICABLE LAW

The United States brings this forfeiture action pursuant to 18 U.S.C. § 981, which authorizes the civil forfeiture of property "involved in," "derived from," or "traceable to" specified federal offenses. 18 U.S.C. § 981(a)(1). A civil forfeiture action is an in rem proceeding against property rather than an individual, but individuals may intervene to protect

their interest in the property. See United States v. All Assets Held at Bank Julius Baer & Co. ("Bank Julius II"), 480 F. Supp. 3d 1, 11 (D.D.C. 2020). Prospective intervenors must establish both constitutional and statutory standing to participate in the action. See id. at 13 ("Standing is a threshold consideration in all cases, including civil forfeiture cases." (quoting United States v. One-Sixth Share of James J. Bulger in All Present And Future Proceeds of Mass Millions Lottery Ticket ("One-Sixth Share"), 326 F.3d 36, 40 (1st Cir. 2003))).

The constitutional standing requirement is grounded in Article III's case-or-controversy limitation. See Bank Julius II, 480 F. Supp. 3d at 12. The D.C. Circuit has explained that "[t]he requirements for a [claimant] to demonstrate constitutional standing to challenge a forfeiture are very forgiving." United States v. Seventeen Thousand Nine Hundred Dollars ($17,900.00) in U.S. Currency ("$17,900.00 in U.S. Currency"), 859 F.3d 1085, 1089-90 (D.C. Cir. 2017) (alterations in original) (quoting United States v. Emor, 785 F.3d 671, 676 (D.C. Cir. 2015)). "In general, any colorable claim on the property suffices . . . ." Id. at 1090 (quoting United States v. Emor, 785 F.3d at 676); see also Sierra Club v. EPA, 322 F.3d 718, 726 (D.C. Cir. 2003) (describing a "colorable" claim as one that is "not frivolous, unreasonable, or groundless" (citation modified)).

A colorable claim "typically" is underpinned by "an ownership or possessory interest," which satisfies Article III's standing requirement "because an owner or possessor of property that has been seized necessarily suffers an injury that can be redressed at least in part by the return of the seized property." $17,900.00 in U.S. Currency, 859 F.3d at 1090 (quoting United States v. $515,060.42, 152 F.3d 491, 497 (6th Cir. 1998)). But "[t]he D.C. Circuit has left open the possibility that an interest other than an ownership or property interest can confer standing for a civil forfeiture claimant," so long as "the elimination of [the] claimant['s] interest

amounts to an injury that is actual and concrete." Bank Julius II, 480 F. Supp. 3d at 20 (first alteration added) (quoting United States v. All Assets Held in Acct. No. XXXXXXXX in name of Doraville Props. Corp. ("Doraville Props."), 299 F. Supp. 3d 121, 135 (D.D.C. 2018)); see $17,900.00 in U.S. Currency, 859 F.3d at 1090. In addition to establishing an injury-in-fact, the claimant must show "that the injury is fairly traceable to the defendant's conduct (a causal connection); and . . . that a favorable decision on the merits likely will redress the injury." Bank Julius II, 480 F. Supp. 3d at 12.

The statutory standing requirement is grounded in 18 U.S.C. § 983, which limits intervention in a civil forfeiture action to "any person claiming an interest in the seized property" who "file[s] a claim asserting such person's interest in the property in the manner set forth" in the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions (the "Supplemental Rules"). 18 U.S.C. § 983(a)(4)(A); see Bank Julius II, 480 F. Supp. 3d at 14. Section 983 and Supplemental Rule G(5) require a claimant in a civil forfeiture action to "state the claimant's interest" in "the specific property" that is named as the defendant asset. 18 U.S.C. § 983(a)(2)(C); see also FED. R. CIV. P. SUPP. R. G(5)(a)(i) (same). A claimant who fails to assert such an interest in the defendant property lacks statutory standing to challenge the forfeiture. See United States v. All Assets Held at Bank Julius Baer & Co., 772 F. Supp. 2d 191, 198 (D.D.C. 2011).

The United States "may move to strike a claim or answer . . . because the claimant lacks standing" "[a]t any time before trial." FED. R. CIV. P. SUPP. R. G(8)(c)(i)(B); see United States v. Fifty-Three Virtual Currency Accts., Civil Action No. 20-2227 (RC), 2025 WL 2732705, at *4 (D.D.C. Sep. 25, 2025). "Ultimately, the purpose of standing in forfeiture cases is to ensure that the government is required to prove the forfeitability of property only when

someone with a legitimate interest contests the action." United States v. Fifty-Three Virtual Currency Accts., 2025 WL 2732705, at *4.

III. DISCUSSION

The United States has moved to strike the Greenbaum Claimants' verified claims and answer on the ground that the Claimants have failed to establish either constitutional or statutory standing to intervene. See Mot. The Court notes, however, that in its motion to strike, the United States does not delineate between the two types of standing at play here, instead asserting that the Greenbaum Claimants' standing is lacking "[w]hether viewed as a constitutional or statutory infirmity." Mot. at 6. In fairness to the United States, this sort of imprecision apparently is common in the civil forfeiture caselaw. See United States v. All Funds on Deposit with R.J. O'Brien Assocs., 892 F. Supp. 2d 1038, 1048 (N.D. Ill. 2012) ("Many reported forfeit[ure] cases discuss standing, but it is unclear whether they are discussing the standing requirement that the civil forfeiture statute and rules impose on claimants, or standing under Article III."). This Court previously has recognized that the civil forfeiture statute imposes standing requirements that are "separate, though partly overlapping," from those imposed by Article III. United States v. All Assets Held at Bank Julius Baer & Co., 959 F. Supp. 2d 81, 96 n.10 (D.D.C. 2013). Consistent with that recognition, the Court will address each type of standing—constitutional and statutory—in turn.

*A. Constitutional Standing*

The Greenbaum Claimants argue that they have constitutional standing to contest forfeiture of the Defendant Property based on their "colorable claim to" that property under Section 201(a) of the Terrorism Risk Insurance Act (the "TRIA"). Opp. at 5; see $17,900.00 in

U.S. Currency, 859 F.3d at 1090. Congress passed the TRIA in 2002 "to make it easier for those who have obtained valid judgments against terrorists and their affiliates to actually recover damages." Doe v. Taliban, 101 F.4th 1, 7 (D.C. Cir. 2024). Section 201(a) of the TRIA provides:

> Notwithstanding any other provision of law, . . . in every case in which a person has obtained a judgment against a terrorist party on a claim based upon an act of terrorism, or for which a terrorist party is not immune . . . , the blocked assets of that terrorist party (including the blocked assets of any agency or instrumentality of that terrorist party) shall be subject to execution or attachment in aid of execution in order to satisfy such judgment to the extent of any compensatory damages for which such terrorist party has been adjudged liable.

TRIA § 201(a).

In its motion to strike, the United States does not contest that the Greenbaum Claimants have adequately set forth the TRIA's applicability to the Defendant Property—i.e., that Iran is a "terrorist party" within the meaning of the TRIA, that the Defendant Property is a "blocked asset," etc. See Mot.; see also Opp. at 3-4 (setting forth how the Claimants' judgments "meet each element of the TRIA"). The Court therefore will assume, at least for purposes of the instant motion, that the Greenbaum Claimants can satisfy the substantive requirements of Section 201(a).[4] "[B]ecause all of the requirements of the TRIA are satisfied" in this case, the Claimants contend that they "are entitled to use the Defendant Property to satisfy their

---

[4] In its reply brief, the United States contends that the Defendant Property is not, in fact, a "blocked asset" under the TRIA. See Reply at 8-9 & n.2. The United States, of course, may not press that contention for the first time in a reply. See Nippon Shinyaku Co. v. Iancu, 369 F. Supp. 3d 226, 239 n.8 (D.D.C. 2019) ("Arguments raised for the first time in a reply brief are waived."). In any event, the United States' argument appears to be premised on the notion that once the Office of Foreign Assets Control issued a license authorizing the United States to seek forfeiture of the Defendant Property, the property was no longer a "blocked asset" within the meaning of the TRIA. See Reply at 8. That notion has been rejected by the D.C. Circuit. See Est. of Levin v. Wells Fargo Bank, N.A., 156 F.4th 632,639-41 (D.C. Cir. 2025).

outstanding judgments." Opp. at 5. In the Claimants' view, that entitlement is all that is needed to establish a nonfrivolous claim to the property sufficient to confer constitutional standing.

In support of their position, the Greenbaum Claimants point to the Seventh Circuit's decision in United States v. All Funds on Deposit with R.J. O'Brien & Associates ("R.J. O'Brien"), 783 F.3d 607 (7th Cir. 2015), which the Claimants characterize as "a nearly identical case" to the one before this Court. Opp. at 5. In R.J. O'Brien, the United States sought forfeiture of more than $6 million in blocked assets tied to al Qaeda. See R.J. O'Brien, 783 F.3d at 612-13. Judgment creditors of al Qaeda who were injured during the terrorist attacks on September 11 filed verified claims to contest forfeiture, and in response, the United States challenged the claimants' constitutional and statutory standing to intervene. See id. at 614-15. The Seventh Circuit rejected the United States' constitutional standing argument, concluding that the claimants had alleged "an immediate and actual threat of injury that is far from frivolous—the impending forfeiture of seized terrorist funds to which they have an arguable claim." Id. at 616. Section 201(a) of the TRIA provided that arguable claim, the court explained, because as victims of terrorism who held unsatisfied judgments against the responsible terrorist party, the claimants "fit within [the statute's] ambit. Id. The Seventh Circuit also concluded that the claimants' injury—the "potential harm derived from the forfeiture of the funds" to which they had a colorable claim under the TRIA—was "traceable to the United States' conduct" in seeking forfeiture and that "a favorable federal court decision" would redress the claimants' harm by affording them "the long-awaited opportunity to commence satisfaction . . . of their judgment against al Qaeda." Id. at 617.

This Court reaches the same conclusion as did the Seventh Circuit: Section 201(a) of the TRIA affords the Greenbaum Claimants a colorable claim to the Defendant Property

sufficient to underpin constitutional standing. Like the claimants in R.J. O'Brien, the Greenbaum Claimants are victims of terrorism who hold unsatisfied judgments against Iran for its role in the terrorist activities that harmed them. See Verified Claims ¶¶ 1-3. The Greenbaum Claimants therefore "fit within th[e] ambit" of the TRIA, R.J. O'Brien, 783 F.3d at 616, giving them a colorable ability to obtain "execution or attachment in aid of execution" of the Defendant Property "in order to satisfy [their] judgments," TRIA § 201(a). In addition, the Claimants' injury is "traceable to the United States' conduct." R.J. O'Brien, 783 F.3d at 617. If the United States obtains a final forfeiture order of the Defendant Property—as it attempts to do in this action—that property will no longer be subject to the TRIA and therefore no longer available to the Greenbaum Claimants. See id. And as in R.J. O'Brien, a federal court decision in the Greenbaum Claimants' favor would redress their harms by allowing them to use a portion of the Defendant Property to satisfy their long-outstanding judgments. See id. The "very forgiving" requirements of Article III demand no more. $17,900.00 in U.S. Currency, 859 F.3d at 1089-90 (quoting United States v. Emor, 785 F.3d at 676).

The United States resists this conclusion, arguing that the Greenbaum Claimants possess an "in personam judgment against Iran" and therefore are "unsecured creditor[s] with only a general interest in the judgment debtor's property." Mot. at 6. The United States cites numerous decisions from this circuit and others for the proposition that "unsecured creditors of the alleged owner of a defendant property lack standing to contest a civil forfeiture of the defendant property," id. (collecting cases), because such "creditors cannot claim an interest in any particular asset that makes up the debtor's estate," United States v. $20,193.39 U.S. Currency, 16 F.3d 344, 346 (9th Cir. 1994). The Greenbaum Claimants correctly observe, however, that each case cited by the United States "turned on statutory or rule-based

requirements imposed in forfeiture proceedings, not any standing requirement in Article III of the U.S. Constitution." Opp. at 7. In other words, these cases found an absence of statutory standing—not that the minimum requirements for an Article III case or controversy were unsatisfied.

For example, the United States relies first and foremost on United States v. BCCI Holdings (Luxembourg) SA ("BCCI"), 46 F.3d 1185 (D.C. Cir. 1995). See Mot. at 6-7. That case involved the forfeiture of property pursuant to the Racketeer Influenced and Corrupt Organizations ("RICO") Act, which limits intervention to contest forfeiture to third parties having a "legal interest in property which has been ordered forfeited." BCCI, 46 F.3d at 1188 (quoting 18 U.S.C. § 1963(*l*)(2)). Concluding that the claimant lacked standing to intervene under the RICO statute, the D.C. Circuit explained that "a general creditor can never have an interest in specific forfeited property" because such creditors "can have no interest in particular assets forfeited, as required under [Section 1963]." Id. at 1191. As the Claimants note, "BCCI did not involve the TRIA, and the D.C. Circuit did not address constitutional standing at all." Opp. at 7; see BCCI, 46 F.3d at 1191-92. The other cases that the United States cites likewise turn not on constitutional standing but on requirements imposed by a federal statute or the Supplemental Rules. See, e.g., United States v. $20,193.39 U.S. Currency, 16 F.3d at 346-47 (relying on "[t]he plain language of [18 U.S.C.] § 981(a)(2)" and concluding that the claimant "lacks standing under [Section] 981(a)(2) to contest the forfeiture of the defendant property"); United States v. 2004 Ferrari 360 Modeno, 544 F. App'x 545, 546 (5th Cir. 2013) (per curiam) (concluding that the claimant lacked standing under 18 U.S.C. § 983(d)(6)); United States v. Ribadeneira, 105 F.3d 833, 837 (2d Cir. 1997) (per curiam) (relying on the requirements in 21 U.S.C. § 853(n)(6)(A) and (B)); United States v. All Assets Held at Bank Julius Baer & Co.

("Bank Julius I"), 772 F. Supp. 2d 205, 211-12 (D.D.C. 2011) (relying on the requirements in 18 U.S.C. § 983(a)(2)(C) and Supplemental Rule G(5)(i)).

In its reply, the United States does not squarely address the point raised by the Greenbaum Claimants that the cases it cites turn on statutory requirements. See Reply. Instead, the United States reiterates that, according to the D.C. Circuit, it is "'typically[] an ownership or possessory interest' in the defendant property . . . that supplies the colorable interest to support constitutional standing." Id. at 3 (quoting $17,900.00 in U.S. Currency, 859 F.3d at 1090). "Typically," of course, does not mean exclusively. See Bank Julius II, 480 F. Supp. 3d at 20 ("The D.C. Circuit has left open the possibility that an interest other than an ownership or property interest can confer standing for a civil forfeiture claimant."). The United States does not provide support for its assertion "that an ownership or security interest in the specific property is necessary for constitutional standing." Reply at 4 (emphasis added). The fact that an ownership or possessory interest "is sufficient . . . for a claimant to establish standing" under Article III, United States v. Funds in the Amount of $239,400, 795 F.3d 639, 643 (7th Cir. 2015), does not mean that such an interest is required. "In the end, 'it is injury that is at the heart of the standing question.'" Bank Julius II, 480 F. Supp. 3d at 20 (quoting Doraville Props., 299 F. Supp. 3d at 128).

The United States also criticizes the Greenbaum Claimants' reliance on the Seventh Circuit's R.J. O'Brien decision. See Reply at 3-4. In the United States' view, that case is inapposite because unlike the facts presented here, the claimants in R.J. O'Brien "had obtained a lien on the defendant property." Id. at 3; see R.J. O'Brien, 783 F.3d at 614. "Due to the claimants' lien," the United States asserts, the Seventh Circuit "reasonably found a constitutionally supported injury in an 'impending forfeiture of seized terrorist funds to which

[claimants] have an arguable claim.'" Reply at 3-4 (alteration in original) (quoting R.J. O'Brien, 783 F.3d at 616). The problem for the United States is that the claimants' lien on the defendant property factored into the Seventh Circuit's constitutional standing analysis not at all. See R.J. O'Brien, 783 F.3d at 616-17. The "source" of the claimants' "arguable claim" to the defendant property was not the claimants' lien—it was Section 201(a) of the TRIA. See id. at 616. In R.J. O'Brien, the arguable claim to the defendant property under the TRIA, and the risk that the United States' forfeiture action would extinguish that claim, were enough to clear the "low bar" to establish constitutional standing. Id. at 616-17.

In short, to establish constitutional standing to contest forfeiture, a claimant must assert only a "colorable claim on the property" at issue. $17,900.00 in U.S. Currency, 859 F.3d at 1090. Section 201(a) of the TRIA provides the Greenbaum Claimants with a colorable claim to the Defendant Property. That claim would be extinguished by a final order forfeiting the Defendant Property to the United States, and the Claimants' harm is redressable by an order awarding them a portion of the property. See R.J. O'Brien, 783 F.3d at 616-17. The Greenbaum Claimants therefore satisfy Article III's very forgiving requirements.

*B. Statutory Standing*

As for the Greenbaum Claimants' statutory standing, the cases that the United States cites make clear that a holder of an in personam judgment against a debtor is an unsecured creditor who lacks standing to contest civil forfeiture under 18 U.S.C. § 983 and Supplemental Rule G(5). See Mot. at 6-7 (collecting cases). The Greenbaum Claimants do not dispute that established proposition. See Opp. at 10-11. But the Claimants advance two arguments for why they nonetheless have statutory standing.

First, the Greenbaum Claimants argue that they "have more than just a general unsecured interest in" the Defendant Property. Opp. at 9. For this argument, the Claimants again rely on the TRIA, which they say "confers on the[m] . . . specific rights in defined assets of terrorist parties, such as Iran—i.e., the 'blocked assets of' Iran and its agencies or instrumentalities." Id. (quoting TRIA § 201(d)(2)(A)). The Claimants argue that under the TRIA, "[t]hey have a federal right to satisfy their judgments by looking to a specific and identifiable subset of Iran's assets, a subset that includes the Defendant Property." Id. "This fact," the Claimants say, "distinguishes their claims to the Defendant Property from the typical claims of judgment creditors." Id. at 10.

The Court takes the Greenbaum Claimants' point that, as persons who have "obtained a judgment against a terrorist party on a claim based upon an act of terrorism," TRIA § 201(a), their claim to the Defendant Property is unlike that of a general creditor. But the Court is not convinced that the Claimants' interest, different as it may be, satisfies the requirement of Section 983 and Supplemental Rule G(5) to state an interest in "the specific property being claimed." 18 U.S.C. § 983(a)(2)(C); see FED. R. CIV. P. SUPP. R. G(5)(a)(i) (same). To have statutory standing to contest civil forfeiture, a claimant must articulate a specific interest in the "particular asset" subject to forfeiture. United States v. $20,193.39 U.S. Currency, 16 F.3d at 346; accord Bank Julius I, 772 F. Supp. 2d at 212. The Greenbaum Claimants' interest under the TRIA is not specific to the Defendant Property but rather is in the "blocked assets" of Iran, a broader category that includes, but is not limited to, the Defendant Property—a fact that the Claimants acknowledge. See Opp. at 9 (describing the "blocked assets of Iran" as "a subset that includes the Defendant Property").

Second, in the alternative, the Greenbaum Claimants argue that even if they "are deemed to have no greater rights than those of general unsecured creditors of Iran, they still have statutory standing to contest forfeiture under the TRIA." Opp. at 10. Their argument goes like this: The TRIA applies "[n]otwithstanding any other provision of law." TRIA § 201(a). The D.C. Circuit has held that the TRIA's "notwithstanding" clause "clearly requires courts to disregard other statutory provisions that conflict with the scope of the TRIA." Greenbaum v. Islamic Republic of Iran, 67 F.4th at 432; see also Doe v. Taliban, 101 F.4th at 11 ("[T]he function of the notwithstanding clause is to signal that the TRIA prevails over provisions of law that conflict with the substantive scope of the TRIA."). Section 983 conflicts with the scope of the TRIA and purports to erect execution-related barriers to the Greenbaum Claimants' ability to satisfy their judgments. This Court therefore should disregard the conflicting provisions of Section 983 and hold that the Greenbaum Claimants have statutory standing. See Opp. at 10.

The Greenbaum Claimants are correct that if a conflict exists between the civil forfeiture statute and the TRIA, the latter trumps the former. See Greenbaum v. Islamic Republic of Iran, 67 F.4th at 433; Est. of Levin v. Wells Fargo Bank, N.A., 156 F.4th 632, 643 (D.C. Cir. 2025) ("[I]f TRIA specifically allows attachments that the civil-forfeiture statute specifically prohibits, TRIA prevails."). This Court must begin, then, by understanding the TRIA's scope. The D.C. Circuit has observed that "determining the scope of [the] TRIA [Section] 201, and the extent to which it comes into conflict with another statute, has proven difficult." Greenbaum v. Islamic Republic of Iran, 67 F.4th at 434. That observation certainly rings true here. Careful consideration of the relevant authorities, however, leads the Court to conclude that the civil forfeiture statute must give way to the TRIA in this case.

The D.C. Circuit has cautioned against "an expansive reading of the text of the TRIA . . . as displacing anything that stands in the way of a particular [claimant's] collecting." Greenbaum v. Islamic Republic of Iran, 67 F.4th at 434. "While the TRIA provides a powerful tool for plaintiffs seeking to satisfy judgments based on acts of terrorism," Doe v. Taliban, 101 F.4th at 15-16, that power is not limitless. Instead, "[t]he reach of the notwithstanding clause is . . . necessarily determined by the substantive text that follows it." Greenbaum v. Islamic Republic of Iran, 67 F.4th at 433. That substantive text "clears away execution-specific barriers standing between a judgment creditor and a terrorist party's assets." Doe v. Taliban, 101 F.4th at 12; see TRIA § 201(a) (stating that "in every case in which a person has obtained a judgment against a terrorist party on a claim based upon an act of terrorism . . . the blocked assets of that terrorist party . . . shall be subject to execution or attachment in aid of execution"). Said differently, the D.C. Circuit has read "Section 201(a) to do no more and no less than its text provides—that is, to clear execution-related barriers to recovery against defendants whose immunity from suit has already been lost." Doe v. Taliban, 101 F.4th at 12.[5]

The requirements of the civil forfeiture statute are precisely the sort of "execution-specific barriers standing between" the Greenbaum Claimants and the Defendant Property that the TRIA's notwithstanding clause "clears away." Doe v. Taliban, 101 F.4th at 12. The parties agree that "[b]y its terms, [S]ection 201(a) provides . . . for 'execution or attachment' under certain conditions." Opp. at 10; see Mot. at 8. For purposes of this motion, it is

---

[5] For example, the TRIA's notwithstanding clause does not waive federal sovereign immunity because such a waiver is not "clearly discernable from the [TRIA's] statutory text." Greenbaum v. Islamic Republic of Iran, 67 F.4th at 432 (quoting FAA v. Cooper, 566 U.S. 284, 291 (2012)). For the same reason, the notwithstanding clause does not abrogate foreign jurisdictional immunity from suit. See Doe v. Taliban, 101 F.4th at 11-12. It does, however, "clear[] away execution immunity over a foreign state's 'blocked assets' where that foreign state is already 'not immune'—i.e., is already subject to the court's jurisdiction." Id. at 12.

undisputed that the substantive "conditions" of the TRIA are satisfied. The Greenbaum Claimants have judgments in hand against Iran, a foreign state that is not immune for the claims here, cf. Doe v. Taliban, 101 F.4th at 12, and they are ready to attach Iran's "blocked assets" to satisfy those judgments. Yet as explained above, the Greenbaum Claimants' interest in "execution or attachment in aid of execution" of Iran's "blocked assets" is not sufficiently specific to be cognizable under the civil forfeiture statute. The Claimants thus do not have statutory standing to intervene, but only because Section 983 does not recognize their ability to obtain execution or attachment within a civil forfeiture action. In other words, but for the statutory requirement to state a specific interest in the property, the Claimants could assert a defense to forfeiture and, at least in theory, attach the Defendant Property to satisfy their judgments. The requirement thus is an "execution-related barrier to [the Greenbaum Claimants'] recovery" that the TRIA overrides. Doe v. Taliban, 101 F.4th at 12.

On this point, the Seventh Circuit's R.J. O'Brien decision again is instructive. There, the United States contested the claimants' statutory standing on the grounds that the claimants had not satisfied certain procedural requirements of 18 U.S.C. § 983 and Supplemental Rule G(5)—namely, the "filing deadlines and interest statements concerning the defendant funds." R.J. O'Brien, 783 F.3d at 618. The United States also argued that the claimants were not "innocent owners" of the defendant property—an affirmative defense to civil forfeiture. Id. Focusing on the "innocent owner" provision, the Seventh Circuit agreed with the United States that the claimants could not make out an innocent owner defense and thus were not within the zone of interest of the civil forfeiture statute. See id. at 620. "Without some mechanism that enables [the claimants] to overcome this . . . obstacle," the court reasoned, the claimants "would be unable to participate in the forfeiture proceeding." Id.

Once again, the Seventh Circuit found the answer in the TRIA, which, the court concluded, "cures [the claimants'] standing defect under civil forfeiture law." R.J. O'Brien, 783 F.3d at 620. The court explained that the requirements to make out an innocent owner defense were in "conflict" with the "TRIA's broad 'notwithstanding' clause" because "once the United States commences a forfeiture action, it is impossible for qualified albeit unrelated victims of terror . . . to comply with civil forfeiture's innocent owner requirement and, at the same time, execute against the blocked funds." Id. That is because the "innocent owner" defense requires a claimant to establish that they "acquired an ownership interest in the property after the triggering event as bona fide purchasers or sellers for value . . . without knowledge that the funds were subject to forfeiture." Id. The claimants, of course, "did not purchase or sell anything" but rather sought "to recover their losses" using the defendant property, as permitted by the TRIA. Id. "This conflict," the court determined, "requires the innocent owner provision to yield in the face of [the] TRIA's broad 'notwithstanding' clause." Id.

The United States again argues that R.J. O'Brien is inapposite, asserting that in relying on that case, the Greenbaum Claimants "cherry-pick phrases" and "gloss over the Seventh Circuit's actual analysis of standing." Reply at 7. Specifically, the United States contends that R.J. O'Brien does not help the Claimants because the Seventh Circuit did not directly address "the relevant question here—whether claimants had satisfied the requirement of having a specific property interest in the defendant property." Id. True, the court in R.J. O'Brien focused on the "innocent owner" defense rather than on the specific interest requirement. But that was because the claimants in R.J. O'Brien had obtained a lien on the property subject to forfeiture, so the United States could not and did not dispute that the claimants had the requisite specific interest. See R.J. O'Brien, 783 F.3d at 619-21. Nonetheless, the Seventh Circuit made

clear that its reasoning with respect to the innocent ownership provision also would apply to the specific interest requirement. The court affirmed the district court's grant of leave to amend after the claimants had obtained a lien on the defendant property. It explained that the district court correctly "recogniz[ed] the flattening effect of [the] TRIA's 'notwithstanding' clause" and thus had "properly exercised its discretion and permitted [the claimants] to amend their claims." Id. at 619. "As a result," the Seventh Circuit concluded, "this procedural requirement . . . poses no bar to [the claimants'] statutory standing under civil forfeiture." Id.[6]

The United States, for its part, directs the Court to the Fifth Circuit's decision in United States v. Holy Land Foundation for Relief and Development ("Holy Land"), 722 F.3d 677 (5th Cir. 2013). There, the Fifth Circuit held that "[Section] 201(a) of the TRIA does not trump the criminal forfeiture provisions of 21 U.S.C. § 853"—which provides for forfeiture upon conviction for certain drug offenses—rejecting the argument that the notwithstanding clause "trumps any other law that has the incidental effect of removing funds from the reach of judgment creditors." Holy Land, 722 F.3d at 687-88. Notably, the United States in R.J. O'Brien likewise relied on the Holy Land decision to argue that the TRIA's notwithstanding clause did not trump civil forfeiture's standing requirements. See R.J. O'Brien, 783 F.3d at 621. Rejecting the United States' argument, the Seventh Circuit observed that "the Fifth Circuit rendered [its] holding in response to arguments that boldly contravened the plain text of TRIA"—namely, that the "TRIA superseded provisions within itself, rendering the 'blocked assets' requirement of the

---

[6] The Court acknowledges that in United States v. Fifty-Three Virtual Currency Accounts, Judge Contreras held that judgment creditors of Hamas lacked standing to contest civil forfeiture of assets traceable to Hamas. See United States v. Fifty-Three Virtual Currency Accts., 2025 WL 2732705, at *4. But the claimants in that case do not appear to have relied on R.J. O'Brien or otherwise developed an argument based on their entitlements under the TRIA. See id.

statute unnecessary." Id.; see Holy Land, 722 F.3d at 688 ("Were we to adopt the [claimants'] interpretation of [the] TRIA [Section] 201, we would broaden the reach of the provision by overriding the statutorily supplied definition of 'blocked' assets.").[7] The claimants in R.J. O'Brien made "no such argument," R.J. O'Brien, 783 F.3d at 621, and the Greenbaum Claimants here do not either. Rather, the Claimants "are arguing that specific provisions of the forfeiture statute conflict with the TRIA and thus must yield to the TRIA's notwithstanding clause." Opp. at 12.

The United States asserts that the Holy Land decision "make[s] all the sense in the world" because "[t]he 'notwithstanding' clause in the TRIA does not preempt all other statutes no matter their purpose or import." Reply at 7. That is right, as the Claimants concede. See Opp. at 14. The TRIA is not "a wrecking ball that c[an] be wielded to demolish any law that ha[s] the incidental effect of preventing terrorism victims from enforcing their judgments against assets not within the scope of the TRIA's plain language." Id. The TRIA instead preempts "execution-related barriers to recovery"—no more, and no less. Doe v. Taliban, 101 F.4th at 12. Because the specific interest requirement of Section 983 and Supplemental Rule G(5) is such a barrier, it must give way to the TRIA.

That is not to say, of course, that in the end the Greenbaum Claimants necessarily will be able to use the Defendant Property to satisfy their judgments. Other obstacles—for

---

[7] Though not explicitly relied upon by the United States, the same is true of the Supreme Court's decision in Ministry of Defense & Support for the Armed Forces of the Islamic Republic of Iran v. Elahi ("Elahi"), 556 U.S. 366 (2009). There, the Supreme Court rejected the argument that the TRIA's notwithstanding clause overrode the "relinquishment provision" found within the TRIA itself. See Elahi, 556 U.S. at 386 ("Congress could not have intended the words to which Elahi refers to narrow so dramatically an important provision that it inserted in the same statute."). Unlike the plaintiff in Elahi, the Greenbaum Claimants do not contend that the notwithstanding clause overrides other provisions of the TRIA itself that would prevent them from satisfying their judgments.

example, federal sovereign immunity—might prevent the Greenbaum Claimants from attaching the Defendant Property. Indeed, the D.C. Circuit already has held that sovereign immunity prevents the Claimants from obtaining a writ of attachment against the Defendant Property under D.C. law. See Greenbaum v. Islamic Republic of Iran, 67 F.4th at 430, 435. The Greenbaum Claimants maintain that they have other avenues to enforce their judgments using the Defendant Property, such as Rule 69(a) of the Federal Rules of Civil Procedure. See Opp. at 15-19. But whether that is so, the parties agree, "go[es] beyond the question at hand—whether the Court should strike [the Claimants'] claims and answer to the Amended Complaint for a lack of standing." Reply at 9.[8]

Because the Court concludes that the Greenbaum Claimants have standing to contest forfeiture, it will deny the United States' motion to strike on that basis.[9]

---

[8] In R.J. O'Brien, the Seventh Circuit ultimately ruled that the defendant property funds were not "blocked assets," such that the claimants could not "attach the defendant funds, now seized and held by the United States." R.J. O'Brien, 783 F.3d at 628. The United States insists that this ruling supports its argument because "[i]f the Seventh Circuit believed the 'specific property interest' requirement for statutory standing was superseded by TRIA, its entire analysis of whether the funds could be assets subject to attachment under TRIA would have been irrelevant." Reply at 8 n.1. But that is not so. The Seventh Circuit expressly premised its standing analysis on the assumption that the claimants "have a viable (i.e., not frivolous) case that the funds remain blocked and subject to attachment under [the] TRIA." R.J. O'Brien, 783 F.3d at 621 n.6. In other words, whether the claimants could successfully attach the defendant property was separate from whether the claimants had standing to participate in the forfeiture proceeding at all. The same is true here. Whether the Greenbaum Claimants ultimately will succeed in enforcing their judgments using the Defendant Property is not the question here. See Bank Julius II, 480 F. Supp. 3d at 13 ("When the government moves to strike a claim because the claimant lacks standing, courts must not conflate the standing inquiry 'with the merits determination that comes later.'" (quoting One-Sixth Share, 326 F.3d at 41)).

[9] The United States argues that the Greenbaum Claimants have alternative routes to pursue a portion of the Defendant Properties: they may file a petition for remission or mitigation with the Department of Justice under 18 U.S.C. § 981(d) and 28 C.F.R. § 9.4, or they may apply to participate in the U.S. Victims of State Sponsored Terrorism Fund established in 34 U.S.C. § 20144. See Mot. at 9; Reply at 10. The Greenbaum Claimants maintain that no alternative routes are available to them. See Opp. at 20-21. These arguments do not bear on the Court's standing analysis, so the Court will not weigh in on them.

IV. CONCLUSION

For the foregoing reasons, the Court will DENY the United States' Motion to Strike Greenbaum Claimants' Verified Claims and Answer [Dkt. No. 65]. An Order consistent with this Opinion will issue this same day.

SO ORDERED.

PAUL L. FRIEDMAN
United States District Judge

DATE: 9/4/26