UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ALL PETROLEUM-PRODUCT CARGO ABOARD THE ACHILLEAS WITH INTERNATIONAL MARITIME ORGANIZATION NUMBER 9398072,<br><br>Defendant In Rem,<br><br>FUJAIRAH INTERNATIONAL OIL & GAS CORPORATION,<br><br>Claimant,<br><br>- and -<br><br>STEVEN M. GREENBAUM, et al.,<br><br>Claimants. | Civil Action No. 21-0305 (PLF) |

OPINION

This matter is before the Court on the United States' Motion to Strike or for Partial Judgment on Affirmative Defenses Asserted by FIOGC [Dkt. No. 66].[1] In this civil

[1] The filings reviewed in connection with this motion include the following documents and their attachments: United States' Verified Complaint for Forfeiture In Rem ("Compl.") [Dkt. No. 1]; Warrant for Arrest In Rem ("Warrant") [Dkt. No. 2]; Government's Motion for Interlocutory Sale ("Mot. for Sale") [Dkt. No. 3-2]; Order dated February 9, 2021 ("Sale Order") [Dkt. No. 5]; Claimant Fujairah International Oil & Gas Corporation Verified Claim and Statement of Interest in Defendant Property ("Verified Claim") [Dkt. No. 7]; Notice of Extension of Potential Claimants' Claim Deadline ("Extension Notice") [Dkt. No. 18]; Notice of Filing Accounting of Interlocutory Sale ("Sale Notice") [Dkt. No. 23]; United States' Motion for Leave to Amend ("Mot. to Amend") [Dkt. No. 57]; United States' Verified Amended

action, brought in rem, the United States seeks forfeiture of the proceeds from the sale of oil cargo that allegedly belonged to sanctioned entities of the Islamic Republic of Iran (the "Defendant Property"). Pursuant to Rule G(5) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions (the "Supplemental Rules"), Fujairah International Oil & Gas Corporation ("FIOGC") has filed an answer to the United States' verified complaint, asserting numerous affirmative defenses to forfeiture of the Defendant Property. The United States now asks this Court to dispose of most of those asserted defenses before the parties proceed to discovery. Upon careful consideration of the parties' written submissions, the relevant authorities, and the record as a whole, the Court will grant in part and deny in part the United States' motion.

## I. BACKGROUND

On February 2, 2021, the United States filed a verified complaint against the Defendant Property, oil cargo formerly aboard a vessel called the M/T Achilleas, alleging that the oil was owned by Iranian entities designated as foreign terrorist organizations and thus subject to civil forfeiture under 18 U.S.C. § 981(a)(1)(G)(i). See Compl.; FAC ¶¶ 1-2. The following day, the Court issued an in rem arrest warrant for the Defendant Property. See Warrant. The United States then moved the Court for an interlocutory sale of the Defendant Property, see Mot. for Sale, which the Court granted on February 9, 2021, see Sale Order.

---

Complaint for Forfeiture In Rem ("FAC") [Dkt. No. 61]; Claimant Fujairah International Oil & Gas Corporation's Answer to Plaintiff's Verified Amended Complaint for Forfeiture In Rem ("Answer") [Dkt. No. 63]; United States' Motion to Strike or for Partial Judgment on Affirmative Defenses Asserted by FIOGC ("Mot.") [Dkt. No. 66]; Claimant's Memorandum in Opposition to Plaintiff's Motion to Strike or for Partial Judgment on Affirmative Defenses Asserted ("Opp.") [Dkt. No. 69]; and United States' Reply in Support of its Motion to Strike or for Partial Judgment on Affirmative Defenses Asserted by FIOGC1605 ("Reply") [Dkt. No. 75].

Thereafter, the Defendant Property was sold, and its net proceeds—approximately $100 million—constitute the substitute res in this action. See Sale Notice.[2] "The United States is holding the substitute res in an interest-bearing account maintained by the Government pending the conclusion of the action as per the requirements of the Court's [Sale] Order of February 9, 2021." Id.

According to its verified claim filed on March 11, 2021, FIOGC is a company incorporated under the laws of the United Arab Emirates (the "UAE") and is owned, controlled, and operated by the Government of Fujairah. See Verified Claim ¶¶ 4-5. FIOGC "has a possessory interest in, and is intermediary seller of, the Defendant Property as restrained when aboard the vessel MT Achilleas." Id. ¶ 1. FIOGC "is also a voyage charterer and a bill of lading shipper of the Defendant Property aboard the MT Achilleas." Id. ¶ 2. As such, FIOGC asserts a "cognizable interest in, and valid claim to, the Defendant Property." Id. ¶ 3.

On May 1, 2024, the United States moved for leave to amend its verified complaint, see Mot. to Amend, which the Court granted by Minute Order dated July 3, 2024. FIOGC filed its answer to the amended complaint on July 29, 2024, asserting fifteen affirmative defenses to forfeiture of the Defendant Property. See Answer. On September 13, 2024, the United States moved to strike all but five of those affirmative defenses, arguing that they "have no legal merit" and that disposing of them "will focus this case for discovery." Mot. at 4. FIOGC filed its opposition to the United States' motion on November 1, 2024, see Opp., and the United States filed its reply on November 26, 2024, see Reply. The United States' motion is now ripe for decision.

---

[2] The Court refers to the substitute res as the "Defendant Property" in this Opinion.

## II. LEGAL STANDARD

The United States moves to dispose of FIOGC's affirmative defenses under Rule 12(f) and Rule 12(c) of the Federal Rules of Civil Procedure. See Mot. at 1. The United States notes that it has moved under both rules "out of an abundance of caution but believes the substantive analysis is the same under either." Id. at 4 n.1. "If a plaintiff seeks to dispute the legal sufficiency of fewer than all of the defenses raised in the defendant's pleading, he should proceed under Rule 12(f) rather than under Rule 12(c) because the latter leads to the entry of a judgment." 5C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1369 (3d ed. 2019). "Although more recent cases have recognized the notion of a partial judgment on the pleadings" under Rule 12(c), "such motions directed at defenses should be construed as motions to strike." Id. Accordingly, the Court will treat the United States' motion to dispose of certain affirmative defenses as a motion to strike under Rule 12(f).

Rule 12(f) provides that, "on its own" or "on motion made by a party," "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). Though the "decision to grant or deny a motion to strike is vested in the trial judge's sound discretion[,] . . . a motion to strike is a drastic remedy that courts disfavor." United States ex rel. Landis v. Tailwind Sports Corp., 308 F.R.D. 1, 4 (D.D.C. 2015) (quoting Gates v. District of Columbia, 825 F. Supp. 2d 168, 169 (D.D.C. 2011)). Motions under Rule 12(f) "should be granted where it is clear that the affirmative defense is irrelevant and frivolous and its removal from the case would avoid wasting unnecessary time and money litigating the invalid defense." Intex Recreation Corp. v. Team Worldwide Corp., 390 F. Supp. 2d 21, 24 (D.D.C. 2005) (quoting Ass'n of Am. Med. Colls. v. Princeton Rev., Inc., 332 F. Supp. 2d 11, 22 (D.D.C. 2004)). "A motion to strike may prove

useful 'when the parties disagree only on the legal implications to be drawn from uncontroverted facts.'" United States v. DynCorp Int'l LLC, 282 F. Supp. 3d 51, 55 (D.D.C. 2017) (quoting 5C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1381 (3d ed. 2011)). "[E]ven when the defense presents 'a purely legal question, federal courts are very reluctant to determine disputed or substantial issues of law on a motion to strike.'" Id. (quoting WRIGHT & MILLER, supra, § 1381).

## III. DISCUSSION

In its motion to strike, the United States argues that the Court should dispose of ten of FIOGC's fifteen affirmative defenses—every defense except for "FIOGC's innocent owner-based defenses (defense nos. 3, 4), its generalized failure to state a claim defenses (nos. 6, 12), and its Excessive Fines defense (defense no. 13)." Mot. at 4. In its opposition, "FIOGC withdraws its affirmative defenses of probable cause, takings, improper advisory opinion, and reservation of other defenses (defense nos. 5, 7, 10, and 15)." Opp. at 2. Accordingly, a dispute remains as to six of FIOGC's affirmative defenses: that this Court lacks subject matter jurisdiction (no. 1); that this Court lacks in rem jurisdiction (no. 2); that the United States' claim to a superior interest in the Defendant Property is barred by the Constitution's substantive and procedural due process protections (no. 8); that this action is barred by various equitable principles (no. 9); that this action is barred by the doctrine of comity (no. 11); and that the Foreign Sovereign Immunities Act (the "FSIA") bars this suit (no. 14). The Court will address each defense in turn.

*A. Subject Matter Jurisdiction (Defense No. 1)*

In its first defense, FIOGC asserts that "[t]his Court lacks subject matter jurisdiction to order the forfeiture of property." Answer at 23-24. Specifically, FIOGC contends that the Court has no authority to entertain this suit because the Defendant Property was "seized within the territorial seas of the UAE and arrested and forfeited beyond the territorial seas of any nation and not conducted under the authority of 14 U.S.C. § 522(a)." Id. The United States argues that this affirmative defense is flatly meritless because "the United States does not rely on 14 U.S.C. § 522(a) as a basis for subject matter jurisdiction in this suit" and instead "relies on 28 U.S.C. §§ 1345 and 1355 for that purpose." Mot. at 5; see FAC ¶ 3.

28 U.S.C. § 1345 provides:

> Except as otherwise provided by Act of Congress, the district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States, or by any agency or officer thereof expressly authorized to sue by Act of Congress.

28 U.S.C. § 1345. 28 U.S.C. § 1355(a) provides:

> The district courts shall have original jurisdiction, exclusive of the courts of the States, of any action or proceeding for the recovery or enforcement of any fine, penalty, or forfeiture, pecuniary or otherwise, incurred under any Act of Congress, except matters within the jurisdiction of the Court of International Trade under section 1582 of this title.

Id. § 1355(a).

The United States commenced this suit against the Defendant Property, meaning the Court would seem to have original jurisdiction under the plain language of 28 U.S.C. § 1345. Moreover, this is an in rem forfeiture action arising under the civil forfeiture laws of the United States, meaning the Court would seem to have original jurisdiction under the plain language of 28 U.S.C. § 1355(a). See FAC at 21 (asserting a cause of action for "forfeiture" under 18 U.S.C. § 981(a)(1)(G)). Indeed, numerous courts in and outside of this district have concluded that each

of these two statutory provisions confers subject matter jurisdiction over in rem forfeiture suits. See, e.g., United States v. All Virtual Currency Seized From One MEXC Acct. Ending in 8248, One MEXC Acct. Ending in 7017, One Binance Acct. Ending in 8327, & One Binance Acct. Ending in 5064, Civil Action No. 24-3309 (LLA), 2026 WL 746878, at *3 (D.D.C. Mar. 17, 2026) (finding subject matter jurisdiction in an in rem forfeiture action based on 28 U.S.C. §§ 1345 and 1355(a)); United States v. $601,426.19 of Funds Associated With Dynapex Energy Ltd., Civil Action No. 24-542 (JMC), 2024 WL 4854310, at *4 (D.D.C. Nov. 21, 2024) (same); United States v. 8,911 Type 56-1 Assault Rifles, Civil Action No. 23-1951 (JEB), 2023 WL 8354884, at *2 (D.D.C. Dec. 1, 2023) (same); United States v. U.S. Currency in the Amount of Twenty-Three Thousand Four Hundred Eighty One Dollars, ($23,481), More or Less, 740 F. Supp. 950, 952 (E.D.N.Y. 1990) (same).

In arguing that this Court lacks subject matter jurisdiction, FIOGC makes a host of arguments that are at times difficult to follow. The United States rightly points out that essentially all of FIOGC's arguments conflate the distinct concepts of subject matter jurisdiction (the Court's authority to hear the claims) and in rem jurisdiction (the Court's authority to exercise dominion over the res). See Reply at 7; see, e.g., Opp. at 9 (FIOGC contending that "28 U.S.C. §§ 1345 and 1355(a) are Insufficient Jurisdictional Bases Because In Rem Jurisdiction Attaches at the Time of Seizure and This Court Can Not Exercise Jurisdiction Independent of the Bases Relied Upon to Seize the Res"); id. at 10 ("Claimant submits this Court does not have in rem jurisdiction under 28 U.S.C. §§ 1345 and 1355(a)."). The Court's authority to hear the United States' forfeiture claims—its subject matter jurisdiction—does not turn on its authority over the Defendant Property—its in rem jurisdiction. See Kristensons-Petroleum, Inc. v. Sealock Tanker Co., 304 F. Supp. 2d 584, 589 (S.D.N.Y. 2004) ("It is well-settled that subject matter

jurisdiction and in rem jurisdiction are distinct. Accordingly, any purported absence of in rem jurisdiction would not vitiate the subject matter jurisdiction that exists in this matter." (citations omitted)); United States v. All Assets Held at Bank Julius Baer & Co., Ltd., Civil Action No. 04-0798 (PLF), 2023 WL 5000213, at *18 (D.D.C. Aug. 4, 2023) ("[A]n objection to in rem jurisdiction is not an objection to subject matter jurisdiction . . . ." (citations omitted)). FIOGC's arguments that suffer from this conflation, see Opp. at 12-29, are unhelpful to resolving the issue of subject matter jurisdiction.

FIOGC's primary argument on subject matter jurisdiction, as opposed to in rem jurisdiction, is that this Court cannot hear this dispute because 28 U.S.C. §§ 1345 and 1355(a) conflict with the Supreme Court's 1824 decision in The Apollon. See Opp. at 24-28 (citing The Apollon, 22 U.S. (9 Wheat.) 362 (1824)). The United States correctly points out, however, that even if the facts of that case were on all fours with this one, that decision "could not have created exceptions to subject matter statutes passed more than a century after its holding." Reply at 8.[3] This Court therefore would appear to have subject matter jurisdiction under 28 U.S.C. §§ 1345 and 1355(a), given the plain language of those statutes and the absence of any basis for reading exceptions into them.

There is one wrinkle to this analysis, however. FIOGC asserts as its fourteenth affirmative defense that it "is a company owned, controlled, and operated by the Government of

[3] FIOGC also seems to suggest that this Court lacks subject matter jurisdiction because the Defendant Property, according to FIOGC, was seized by the United States without statutory authority. See Opp. at 8-10. It is not entirely clear to the Court, though, whether FIOGC means to argue that the purported improper seizure undermines the Court's subject matter jurisdiction or its in rem jurisdiction, given the conflation noted above. In any event, assuming FIOGC contends that 28 U.S.C. §§ 1345 and 1355(a) do not apply when the property at issue is improperly seized, it points to nothing in the text of those statutes to support that contention. In essence, then, FIOGC asks this Court to read an unwritten exception into 28 U.S.C. §§ 1345 and 1355(a)—something that apparently no other court has done.

the Emirate of Fujairah in the UAE and its property is immune from in rem civil forfeiture suits under, inter alia, the Foreign Sovereign Immunities Act ('FSIA')." Answer at 27.[4] That sovereign immunity defense inescapably overlaps with FIOGC's subject matter jurisdiction defense because if the FSIA did in fact apply and immunize FIOGC from suit, this Court would lack authority to hear this case, notwithstanding 28 U.S.C. §§ 1345 and 1355(a). See Exxon Mobil Corp. v. Corporacion Cimex, S.A. (Cuba), 609 U.S. 108, 116 (2026) ("[U]nder the FSIA, courts lack subject-matter jurisdiction over suits against a foreign state, or against its agencies or instrumentalities, unless an enumerated exception applies."). Put differently, FIOGC's fourteenth affirmative defense—like its first affirmative defense—asserts that this Court lacks subject matter jurisdiction over this suit. Accordingly, to the extent that FIOGC's first affirmative defense is plausible, it is redundant with its fourteenth defense. The Court will strike FIOGC's first affirmative defense—or what remains of it—on that basis. See FED. R. CIV. P. 12(f).

*B. In Rem Jurisdiction (Defense No. 2)*

In its second defense, FIOGC asserts that "[t]his Court lacks in rem jurisdiction to order the forfeiture of property when seized within the territorial seas of the UAE and arrested and forfeited beyond the territorial seas of any nation and not conducted under the authority of 14 U.S.C. § 522(a)." Answer at 24. As noted above, in rem jurisdiction refers to a court's "authority over the property" and to "adjudicate claims of ownership" of that property. United States v. All Funds in Account in Banco Espanol de Credito, Spain ("Banco Espanol"), 295 F.3d 23, 25 (D.C. Cir. 2002); see also United States v. 2,164 Watches, More or Less Bearing a

---

[4] The Court addresses FIOGC's sovereign immunity defense below. See infra Section III.F.

Registered Trademark of Guess?, Inc., 366 F.3d 767, 771 (9th Cir. 2004) ("Jurisdiction in this sense depends on whether the court has power over the defendant res to enforce a judgment against it."). "Under the traditional paradigm, 'the court must have actual or constructive control over the res when an in rem forfeiture suit is initiated.'" United States v. Approximately $1.67 Million (US) in Cash, Stock & Other Valuable Assets Held by or at 1) Total Aviation Ltd., 513 F.3d 991, 996 (9th Cir. 2008) (quoting United States v. James Daniel Good Real Prop., 510 U.S. 43, 58 (1993)). Traditionally, that has meant that "the defendant property is physically present within the court's territorial jurisdiction." United States v. All Assets Held in Acct. No. XXXXXXXX, in Name of Doraville Props. Corp., at Deutsche Bank Int'l in Jersey, Channel Islands ("Doraville"), 330 F. Supp. 3d 150, 156 (D.D.C. 2018); accord Banco Espanol, 295 F.3d at 25. But "Congress altered this traditional rule in 1992. Now, if property located in a foreign country is subject to forfeiture under United States law, the federal government may bring a forfeiture action in" the United States District Court for the District of Columbia. United States v. All Assets Held at Credit Suisse (Guernsey) Ltd., 45 F.4th 426, 430 (D.C. Cir. 2022); see 28 U.S.C. § 1355(b)(2).

On February 3, 2021, this Court issued process—an arrest warrant—on the Defendant Property pursuant to Supplemental Rule G(3). See Warrant; see also FED. R. CIV. P. SUPP. R. G(3). When the Court issued that warrant, the Defendant Property was under the control of the United States. See Verified Claim ¶¶ 27–29 ("On December 31, 2020, on information and belief based on public[ly] available information, MT Achilleas departed the Port of Fujairah, UAE for the United States at the direction of the U.S. Government.").[5] Accordingly,

[5] The parties' dispute centers on how that control came to be. The United States insists that the property was voluntarily surrendered, see Mot. at 8, while FIOGC maintains that

pursuant to Supplemental Rule G(3), the arrest warrant was self-executing. See FED. R. CIV. P. SUPP. R. G(3)(c)(ii)(A); see also Est. of Levin v. Wells Fargo Bank, N.A., Civil Action No. 21-0420 (JEB), 2023 WL 3750577, at *11 (D.D.C. June 1, 2023) ("At the time the Government initiated its forfeiture action, the . . . funds were within the exclusive control of the United States . . . . As a result, under the Federal Rules of Civil Procedure, the Government did not need to do anything more to bring the funds into the jurisdiction of that proceeding."), rev'd on other grounds, 156 F.4th 632 (D.C. Cir. 2025). Once the arrest warrant was issued, "the forfeiture action became the exclusive forum to resolve disputes over those funds." Id. at *10.

Thereafter, the Defendant Property was sold pursuant to this Court's interlocutory sale order. See Sale Order; Sale Notice. The proceeds of that sale now sit in an account held by the United States, as directed by this Court. See id. Courts in this district have found in rem jurisdiction under similar circumstances. See, e.g., United States v. $299,218.48 in United States Currency, 742 F. Supp. 3d 1, 6 (D.D.C. 2024) (finding in rem jurisdiction over funds transferred to an account in D.C. after their seizure); United States v. Approximately 2210.8222 of SOL Cryptocurrency, Civil Action No. 24-3375 (JMC), 2026 WL 679289, at *4 (D.D.C. Mar. 11, 2026) (finding in rem jurisdiction over funds held by the U.S. Marshals); United States v. Approximately 1,467,761.163191 USDT, Civil Action No. 25-34 (JMC), 2026 WL 320193, at *4 (D.D.C. Feb. 6, 2026) (same).

Nevertheless, FIOGC insists that the Court lacks in rem jurisdiction over the Defendant Property. FIOGC argues that the manner in which the United States came to control the Defendant Property—before this Court issued its arrest warrant—was unlawful, thereby

---

"[t]he date and nature of the official 'seizure' are in dispute and will require discovery," Opp. at 26 n.6.

depriving the Court of in rem jurisdiction. See Opp. at 8-28. Specifically, FIOGC contends that the United States' seizure of the Defendant Property exceeded its statutory authority under 14 U.S.C. § 522(a). See id. at 10-11.[6] In response, the United States invokes the established doctrine "that when property is seized (by surrender or force) for civil forfeiture, a party cannot avoid forfeiture by claiming the process used for such a seizure was unlawful." Mot. at 9 (citing United States v. Eight Boxes Containing Various Articles of Miscellaneous Merchandise, 105 F.2d 896, 898 (2d Cir. 1939)); see, e.g., Jeffers v. United States, 187 F.2d 498, 504 (D.C. Cir. 1950) (Stephens, J., concurring) ("It is true that the illegality of a seizure will not defeat a forfeiture proceeding. The Government may adopt the seizure with the same effect as if it had originally been made by one duly authorized."); United States v. Six Hundred Thirty-Nine Thousand Five Hundred & Fifty-Eight Dollars ($639,558) In U.S. Currency, 955 F.2d 712, 715 n.5 (D.C. Cir. 1992) ("[T]he fact that the defendant property had been seized after an illegal search does not 'immunize' it from forfeiture, any more than a defendant illegally arrested is immunized from prosecution."). The United States argues that under this doctrine, even if the United States came to control the Defendant Property without statutory authority, "that would not stymie the United States' efforts to forfeit the Defendant Property in this forfeiture action." Mot. at 10.

---

[6] FIOGC also suggests that the United States invoked "the bases of 14 U.S.C. § 522(a) and 28 U.S.C. § 2461(b) for in rem jurisdiction at the time of seizure" but that "it now wishes to waive the proverbial magic wand and invoke different jurisdictional bases that avoid all factual jurisdictional inquiry during discovery." Opp. at 11. This argument is hard to understand, however, because the United States also invoked 28 U.S.C. § 1355(b)(2) as the source of the Court's jurisdiction to issue a warrant to seize the Defendant Property. See Affidavit in Support of Seizure Warrant at 6, In re All Petroleum-Product Cargo Aboard the M/T Achilleas, No. 20-sz-0113 (ZMF) (D.D.C. June 6, 2024), Dkt. 5-2. The D.C. Circuit has held unequivocally that 28 U.S.C. § 1355(b)(2) affords courts in this district in rem jurisdiction to order the forfeiture of assets located in a foreign country. See Banco Espanol, 295 F.3d at 26.

FIOGC acknowledges that the doctrine invoked by the United States "has been frequently applied in our courts," Opp. at 15, but it suggests that the doctrine might be limited to unlawful seizures under the Fourth Amendment, see id. at 23-24. Regardless, FIOGC insists that the Supreme Court's decision in Cook v. United States, 288 U.S. 102 (1932), "created an express exception for instances where a civil forfeiture seizure violates positive federal law limiting United States jurisdiction." Opp. at 15. The United States responds that Cook v. United States did not "purport to turn on the legality or illegality [of the seizure] under U.S. statutory law." Reply at 18. While FIOGC agrees that "Cook directly addressed a treaty," it maintains that the Supreme Court's "findings equally apply to federal statutes limiting seizure jurisdiction," given that "treaties do not have superiority over acts of Congress." Opp. at 21. The United States responds that "even were the exception in Cook to apply to alleged violations of statutory law, the actions of the United States here violated no proscriptions on its sovereign authority." Reply at 19. Further, it points out that FIOGC cites no statute expressly prohibiting the government from seeking the surrender of or forcibly seizing cargo held by a vessel located in foreign waters. See id. at 20. The United States also observes that other statutes—for example, 28 U.S.C. § 1355(b)(2)—expressly authorize it to pursue seizure of forfeitable assets located in foreign countries. Id. at 20-21.

This outline of the parties' arguments should make clear that the issue of this Court's in rem jurisdiction—a substantial and thorny legal question—is not suitable for disposition in the summary manner contemplated by Rule 12(f). See United States v. DynCorp Int'l LLC, 282 F. Supp. 3d at 55 (observing that "even when the defense presents 'a purely legal question, federal courts are very reluctant to determine disputed or substantial issues of law on a motion to strike'" (quoting 5C WRIGHT & MILLER, supra, § 1381)). The Court notes that it is

skeptical of FIOGC's position, which appears to lack legal support. Indeed, FIOGC cites no case holding that a federal court lacks in rem jurisdiction in a situation like this, where a claimant alleges that the defendant property was improperly seized. But even though FIOGC's "pleading is far from convincing, its failure to cite other [on-point cases] does not mean that the Court should strike this defense at this early stage." Id. at 58. "Whether or not [FIOGC] ultimately prevails on its second . . . affirmative defense," that defense does not "rise[] to the level of 'frivolous'" such that it should be stricken at this early stage of the litigation. Food Recovery Network, Inc. v. Means Database, Inc., Civil Action No. 25-4307 (LLA), 2026 WL 2666340, at *10 (D.D.C. Sep. 10, 2026).

What is more, to the extent the United States contends that the Court is required to decide jurisdictional issues in this posture, see Reply at 4-5, the Court is not persuaded. To be sure, a court "generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction)." Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 430-31 (2007). But the denial of a motion to strike, of course, is not a ruling on the merits. Moreover, such a denial here is consistent with "the high bar for striking a defense and the significant discretion of the Court in deciding whether to do so." United States ex rel. Landis v. Tailwind Sports Corp., 308 F.R.D. at 6.

The Court therefore will deny the United States' motion to strike as to FIOGC's second affirmative defense.

### *C. Due Process (Defense No. 8)*

In its eighth defense, FIOGC asserts that the Constitution's substantive and procedural due process protections bar the United States' claim to a superior interest in the

Defendant Property. See Answer at 25. The substantive component of the Due Process Clause protects against infringements on fundamental rights, that is, those that "are, objectively, deeply rooted in this Nation's history and tradition and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." Washington v. Glucksberg, 521 U.S. 702, 720-21 (1997) (citation modified). The United States contends that it "is unaware of any fundamental interest deeply rooted in this Nation's history that is implicated by forfeiting the property of a terrorist organization or property that affords a person a source of influence over a terrorist organization." Mot. at 16. In its opposition, FIOGC does not respond to the United States' contention or otherwise identify the basis for its substantive due process defense. See Opp. at 36-38. The Court will treat this nonresponse as a concession that FIOGC cannot establish a defense premised on substantive due process. See Hedgeye Risk Mgmt., LLC v. Heldman, 271 F. Supp. 3d 181, 190 (D.D.C. 2017) ("It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded." (quoting Xenophon Strategies, Inc. v. Jernigan Copeland & Anderson, PLLC, 268 F. Supp. 3d 61, 72 (D.D.C. 2017))). The Court therefore will strike FIOGC's substantive due process defense.

As for procedural due process, FIOGC asserts in its opposition that its affirmative defense centers on two issues: first, that it "is entitled to due process protections against the exercise of jurisdiction by U.S. courts in the absence of minimum contacts" and second, that the United States' "delay of greater than three years in filing the amended complaint violates FIOGC's right to a hearing free of prejudice." Opp. at 36. The United States argues in response that "FIOGC's due process defense in its answer did not rest on a lack of minimum contacts or

an unlawful delay by the United States," and nothing in FIOGC's defense "suggested that FIOGC intended to mount a minimum contacts defense nor any defense based on the timing of the Government's Amended Complaint." Reply at 23. Though the D.C. Circuit has not weighed in on the pleading standard for affirmative defenses, "numerous federal courts have held" that "an affirmative defense may be pleaded in general terms and will be held to be sufficient, and therefore invulnerable to a motion to strike, as long as it gives the plaintiff fair notice of the nature of the defense." 5 CHARLES ALLEN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1274 (4th ed. 2026); see United States v. All Assets Held at Bank Julius, Baer & Co., Ltd., 268 F. Supp. 3d 135, 144 (D.D.C. 2017) (stating that this Court "is inclined to agree" with the reasoned decisions of other judges declining to apply a heightened pleading standard to affirmative defenses). Given the fair notice standard, and because the United States has not argued prejudice from FIOGC's terse articulation of its defense, this Court will not strike the procedural due process defense on the ground that it was not sufficiently pleaded. See, e.g., Food Recovery Network, Inc. v. Means Database, Inc., 2026 WL 2666340, at *10 (collecting cases taking the same approach).

Turning to the sufficiency of the due process defenses, the United States contends that FIOGC's delay-based defense has no legal basis, pointing out that FIOGC cites no cases in which the amendment of an existing forfeiture complaint was held to deprive a claimant of due process. See Reply at 24. Indeed, FIOGC acknowledges that the cases it cites concern delays between a property's seizure and the institution of a forfeiture action. See Opp. at 39; see also United States v. Eight Thousand Eight Hundred & Fifty Dollars ($8,850) in U.S. Currency ("$8,850 in U.S. Currency"), 461 U.S. 555, 563-64 (1983) (outlining the test to determine whether a delay in the "post-seizure filing of a judicial forfeiture action" violates a claimant's

"due process right to be heard at a meaningful time"). Here, there is no dispute that the United States timely filed this forfeiture action. FIOGC argues that the three-year delay between the filing of initial complaint and the amended complaint violated its due process rights and that the delay "should be subject to the test delineated in the Supreme Court's $8,850 decision." Opp. at 39. The Court cannot say, at this early stage, that FIOGC's argument—that $8,850 in U.S. Currency should apply to these facts—is frivolous or flatly lacking in merit. Though that decision addressed a different factual scenario, it raised a broader concern about identifying "when a post-seizure delay may become so prolonged that the dispossessed property owner has been deprived of a meaningful hearing at a meaningful time." $8,850 in U.S. Currency, 461 U.S. at 562. Presumably, a prolonged delay in filing an amended complaint—like a prolonged delay in filing an initial complaint—could contribute to the deprivation of one's right to a timely hearing. See id. At the least, FIOGC's argument is plausible enough that striking its delay-based due process claim is not warranted.

The Court also will not strike FIOGC's defense based on a purported lack of minimum contacts at this time. FIOGC argues that it is entitled to the due process protections afforded by the "minimum contacts" test. See Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). That is so, says FIOGC, because the Supreme Court has held that "all assertions of state-court jurisdiction must be evaluated according to the standards set forth in International Shoe and its progeny." Shaffer v. Heitner, 433 U.S. 186, 212 (1977); see Opp. at 37. In FIOGC's view, the United States' failure to demonstrate FIOGC's minimum contacts with the forum, and "the factual analysis required to determine if the minimum contacts test is met, means that [the United States'] motion on the affirmative defense of due process should be denied and this important analysis examined on the merits." Opp. at 36. In its reply, the United States argues that this

defense is baseless because the "minimum contacts test for in personam actions does not extend to in rem actions," citing two of decisions from the Ninth Circuit. Reply at 24 (citing United States v. Nasri, 119 F.4th 1172, 1176 (9th Cir. 2024), superseded on other grounds, 2026 WL 2591865 (9th Cir. Sep. 2, 2026); United States v. Obaid, 971 F.3d 1095, 1105 (9th Cir. 2020)).

The Ninth Circuit appears to be the only court of appeals to have decided the "seldom-raised issue" of whether "the due process requirements from International Shoe and its progeny . . . apply to in rem proceedings" "in the forfeiture context." United States v. Currency 65.08094134 Bitcoin, Civil Action No. 23-10394, 2026 WL 2271798, at *7 (E.D. Mich. Aug. 6, 2026). Holding that those requirements do not apply, the Ninth Circuit reasoned that despite the sweeping language in Shaffer v. Heitner, that case was limited to quasi in rem proceedings—not pure in rem proceedings like civil forfeiture actions. See United States v. Obaid, 971 F.3d at 1101. The Ninth Circuit further recognized "that in the forty-plus years since Shaffer was decided, no court has dismissed a civil forfeiture action for lack of personal jurisdiction over a claimant." Id. at 1102. The Ninth Circuit's decision in Obaid, however, is not binding on this Court, and the D.C. Circuit has not adopted its position. Moreover, the majority's opinion was met with a vigorous and reasoned dissent by Judge Ikuta, indicating that there are strong arguments on both sides of this issue. See id. at 1106 (Ikuta, J., dissenting); see also Doraville, 330 F. Supp. 3d at 157 n.3 (assuming without deciding "that the traditional minimum contacts test applies in true in rem proceedings"). Without binding precedent or a clear circuit consensus, the Court will not dispose of FIOGC's minimum contacts defense in this summary posture. See United States v. DynCorp Int'l LLC, 282 F. Supp. 3d at 55 (observing

that "federal courts are very reluctant to determine disputed or substantial issues of law on a motion to strike").

The Court therefore will strike FIOGC's eighth affirmative defense to the extent that the defense is premised on substantive due process. Otherwise, FIOGC may proceed with its eighth defense.

*D. Equitable Defenses (Defense No. 9)*

In its ninth defense, FIOGC contends that the United States' claim to a superior interest in the defendant property is "barred by unjust enrichment, estoppel, waiver, bad faith, unclean hands, and other equitable defenses." Answer at 25. The government argues that there is no merit to these defenses, pointing out that it is not aware "of any civil forfeiture suit where a court has determined that equitable defenses of the sort pled by FIOGC are valid defenses to a federal civil forfeiture claim." Mot. at 19. In its opposition, FIOGC makes clear that its purported equitable defenses simply repackage other of its affirmative defenses. For example, FIOGC asserts that the United States has contravened due process "in failing to ensure FIOGC had minimum contacts with this forum and in extensively delaying these proceedings" and that this "deprivation of rights" has been compounded by the United States "exceeding its jurisdictional authority" and "infringing upon the jurisdiction of other governmental entities." Id. at 41. The Court addresses those precise arguments elsewhere in this opinion, making it difficult to understand how permitting FIOGC's "ninth defense of equitable defenses . . . to proceed on their merits . . . is the only outcome that avoids awarding the Government for [its] overreach of both [its] jurisdiction and [FIOGC's] constitutional rights in this case," as FIOGC insists. Id. at 42.

Because FIOGC has provided nothing to support the viability of its equitable defenses, which are, in any event, redundant with its other defenses, its ninth affirmative defense will be stricken.

*E. Doctrine of Comity (Defense No. 11)*

In its eleventh defense, FIOGC asserts that the "doctrine of comity" bars this suit because FIOGC is domiciled in the UAE, and the Defendant Property was located within its territory when it was seized by or surrendered to the United States. See Answer at 26. "International comity 'is the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation.'" Usoyan v. Republic of Turkey, 6 F.4th 31, 48 (D.C. Cir. 2021) (quoting Hilton v. Guyot, 159 U.S. 113, 164 (1895)). "Comity can thus be described as a 'golden rule among nations—that each must give the respect to the laws, policies and interests of others that it would have others give to its own in the same or similar circumstances.'" Id. (quoting United States v. One Gulfstream G-V Jet Aircraft, 941 F. Supp. 2d 1, 8 (D.D.C. 2013)). When evaluating an assertion of international comity, "the first task must be to pin down the precise form of the comity doctrine that [the party] purports to invoke." Id. There are "three faces of the doctrine in U.S. law: deference to foreign lawmakers ('prescriptive comity'), deference to foreign tribunals ('adjudicative comity'), and deference to foreign litigants ('sovereign party comity')." Id. (citing William S. Dodge, International Comity in American Law, 115 Colum. L. Rev. 2071, 2078 (2015)). FIOGC purports to rely on "prescriptive comity" as a defense here, suggesting that the doctrine is implicated because the United States argues that various statutes at issue here "have international reach." Opp. at 35.

The United States contends, however, that prescriptive comity "is not a defense at all." Mot. at 20. Rather, the United States points out that "[p]rescriptive comity operates as a

principle of restraint in American law today mainly through the presumption against extraterritoriality." Id. (quoting Dodge, supra, at 2102); see also Empagran S.A. v. F. Hoffmann-LaRoche, Ltd., 417 F.3d 1267, 1271 (D.C. Cir. 2005) (defining "prescriptive comity" as "the respect sovereign nations afford each other by limiting the reach of their laws" (quoting Hartford Fire Ins. Co. v. California, 509 U.S. 764, 817 (1993) (Scalia, J., dissenting))). Notably, FIOGC does not offer a different understanding of prescriptive comity, agreeing with the United States that the doctrine "guides [a court's] interpretation of statutes that might otherwise be read to apply to" conduct occurring abroad. Opp. at 34 (quoting In re Maxwell Commc'n Corp. plc by Homan, 93 F.3d 1036, 1047 (2d Cir. 1996)). Nor does FIOGC respond to the United States' contention that prescriptive comity, as a tool of statutory interpretation, is not properly understood as an affirmative defense. See Mot. at 20; Opp. at 34-35.

Instead, FIOGC insists that the United States "concede[s] that 'courts have applied international comity prospectively, without conflict,' albeit in 'rare circumstances.'" Opp. at 35 (quoting Mot. at 21). FIOGC asserts that once it "is permitted to move forward with its defense in chief following discovery, it will show that this is one such rare circumstance." Id. But even assuming prescriptive comity can operate as an affirmative defense, which FIOGC has not established, FIOGC does not attempt to identify anything that it might uncover during discovery to show that the circumstances of this case are, in fact, rare. Courts that have invoked international comity in the past have premised such invocation on the "rare circumstance" that the "diplomatic interests of the United States and foreign sovereigns aligned in supporting dismissal." Reid v. Doe Run Res. Corp., 110 F.4th 1049, 1054 (8th Cir. 2024) (quoting GDG Acquisitions, LLC v. Gov't of Belize, 749 F.3d 1024, 1034 (11th Cir. 2014)). Plainly, that

circumstance does not exist here because the United States' interest "is not aligned with dismissing this suit—it is, after all, pursuing [this suit] aggressively." Mot. at 21.

Because there is no comity defense available here, the Court will strike FIOGC's eleventh affirmative defense.

*F. Foreign Sovereign Immunity (Defense No. 14)*

In its fourteenth affirmative defense, FIOGC asserts that it "is a company owned, controlled, and operated by the Government of the Emirate of Fujairah in the UAE and its property is immune from in rem civil forfeiture suits under, inter alia, the Foreign Sovereign Immunities Act ('FSIA')." Answer at 27. The United States makes two arguments in support of striking this defense: first, that the FSIA does not apply to in rem civil forfeiture proceedings; and second, that the FSIA does not apply to protect commercial assets. See Mot. at 11-13. For its first argument, the United States relies on United States v. Assa Co., 934 F.3d 185 (2d Cir. 2019), in which the Second Circuit held that the "FSIA does not create jurisdiction over, and does not immunize a foreign state's property from, in rem civil-forfeiture actions." United States v. Assa Co., 934 F.3d at 190; see Mot. at 11. In response, FIOGC contends that the question of foreign sovereign "immunity holds great weight," and the Court should not "skip that analysis" in favor of adopting another tribunal's nonbinding decision. Opp. at 32. FIOGC further contends that the reasoning of Assa is "not supported by the plain text of the [FSIA] and [is] contradicted by other courts that have examined this issue." Id. In light of these arguments and considering that the Second Circuit appears to be the only court of appeals to have reached a conclusion on the applicability of the FSIA to in rem proceedings, the United States "has failed to show the law is so settled as to render [FIOGC's] affirmative defense frivolous." Food Recovery Network, Inc. v. Means Database, Inc., 2026 WL 2666340, at *10. To be sure, FIOGC

"bears the 'ultimate burden of proving its affirmative defenses,'" id., and this Court ultimately might agree with the Second Circuit that the FSIA has no application here. But the Court "need not, and does not, resolve [this] affirmative defense at this early stage." Id.

The same is true of the United States' second argument, that the FSIA does not protect commercial assets. The United States contends that the purpose of the FSIA "is not to immunize foreign states or their assets 'insofar as their commercial activities are concerned,'" and that purpose is reflected in "various commerciality exceptions." Mot. at 13 (quoting 28 U.S.C. § 1602). Specifically, the United States says that "Section 1605(a)(2) provides that a foreign state is not immune in any case in which the action is based 'upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.'" Id. (quoting 28 U.S.C. § 1605(a)(2)). The United States contends that "[p]lainly, engaging in transactions in a fungible commodity of crude oil sourced to Iran on this scale has effects in the United States." Id. FIOGC argues in response that the United States' contention rests on a factual premise that remains in dispute—namely, that the seized oil was, in fact, Iranian-sourced. See Opp. at 34. Given the apparent factual dispute underpinning the United States' argument, the Court will not strike FIOGC's affirmative defense on the basis that the FSIA does not apply to protect commercial assets.

Accordingly, the Court will allow FIOGC to proceed on its foreign sovereign immunity defense.

IV. CONCLUSION

For the foregoing reasons, the Court will GRANT in part and DENY in part the United States' Motion to Strike or for Partial Judgment on Affirmative Defenses Asserted by FIOGC [Dkt. No. 66]. FIOGC has withdrawn the following affirmative defenses: lack of probable cause (no. 5), takings (no. 7), improper advisory opinion (no. 10), and reservation of defenses (no. 15). The Court will strike the following affirmative defenses: lack of subject matter jurisdiction (no. 1), equitable defenses (no. 9), and comity of nations (no. 11). FIOGC may proceed with the following affirmative defenses: lack of in rem jurisdiction (no. 2), innocent owner (no. 3), antiterrorist forfeiture protection (no. 4), failure to state a claim (no. 6), lack of particularity (no. 12), excessive fines (no. 13), and sovereign immunity (no. 14). FIOGC may proceed with its due process defense (no. 8) to the extent that defense pertains to procedural due process concerns, as described in this Opinion.

An Order consistent with this Opinion will issue this same day.

SO ORDERED.

Paul L. Friedman

PAUL L. FRIEDMAN
United States District Judge

DATE: 11/2/26